Filed 5/21/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re N.L., a Person Coming Under the Juvenile Court Law. | B260293<br>(Los Angeles County<br>Super. Ct. No. DK02727) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>Na.L.,<br><br>        Defendant and Appellant. | |

    APPEAL from an order of the Superior Court of the County of Los Angeles, Marguerite D. Downing, Judge.  Affirmed in part, reversed in part, and remanded.

    Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

    No appearance by Plaintiff and Respondent.

INTRODUCTION

Na.L. (mother) appeals from the juvenile court's permanent restraining order against her requiring her to stay away from K.E. (father), the father of N.L., their six-year-old daughter, and N.L. Mother contends that there was insufficient evidence to support the inclusion of N.L. in the restraining order as a protected person. In affirming in part, reversing in part, and remanding the matter, we hold that based on the record, the juvenile court erred by including N.L. in the restraining order.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2013, the Los Angeles County Department of Children and Family Services (Department) filed a Welfare and Institutions Code section 300[2] petition alleging N.L. was at risk due to, inter alia, mother's drug use and her repeated false allegations that father sexually abused N.L. On May 28, 2014, the juvenile court sustained the following petition allegations: "b-3 [¶] The child [N.L.]'s mother has a history of illicit drug use and is a current abuser of marijuana which renders the mother incapable of providing the child with regular care and supervision. On prior occasions in 2013, the mother possessed marijuana, smoked near the child where the child could smell the marijuana and was under the influence of marijuana while the child was in the mother's care and supervision. The mother's substance abuse endangers the child's physical health and safety, placing the child at risk of physical harm, damage and danger. [¶] b-4 [¶] The child [N.L.]'s mother created an endangering and detrimental home environment for the child in that the mother has repeatedly made false allegations to law enforcement and medical personnel that the father sexually abused the child. Such an endangering and

---

[1]     Some of the discussion derives from our prior unpublished opinion in this matter, *In re N.L.* (prior opinion), of which we take judicial notice. We also grant mother's request that we take judicial notice of the record in that appeal.

[2]     All statutory references are to the Welfare and Institutions Code.

detrimental home environment established for the child, by the mother endangers the child's physical health and safety, placing the child at risk of physical harm, damage and danger."

On June 18, 2014, the juvenile court declared N.L. a dependent of the juvenile court, removed her from mother's custody, ordered the child home-of-parent father, mother to have monitored visits with N.L. that were not monitored by father, and that the parents were N.L.'s educational rights holders. In our prior opinion, we affirmed the juvenile court's jurisdiction order.

On August 11, 2014, father filed a request for a restraining order seeking, inter alia, an order that mother stay at least 100 yards away from him and N.L., their residence, his workplace, his vehicle, and N.L.'s school. In support of his request for a restraining order, father declared under penalty of perjury that "[o]n June 18, 2014, following the hearing, [mother] attempted to remove [N.L.] from school. Mother threatened Father, struck him, leaving scratches on Father's hand and pulled his hair. Mother threatened Father when she told him 'You dead Motherf-----.' 'You already know what's coming to you.' 'My people are going to put a bullet through your head.' Mother violated the court's 12/18/13 order that she stay [a]way from Father's home and [N.L.'s] school."[3]

The juvenile court granted father's request, issued a temporary restraining order, and set an order to show cause hearing for August 18, 2014. Thereafter, on several occasions, the juvenile court extended the time of the expiration of the temporary restraining order.

On September 15, 2014, the Department reported that "mother currently has [monitored] visits with [N.L.] every Sunday for 6 hour[s] [a] day . . . . [During mother's monitored visits with N.L.,] mother's interaction with [N.L.] is good, and [N.L.] appears to enjoy spending time with her mother. [N.L.] has reported to [the Department] that she likes visiting with her mother."

---

[3] The record does not include the December 18, 2013, order.

On October 15, 2014, the juvenile court held an order to show cause hearing regarding the issuance of a permanent restraining order. On that date, father declared under penalty of perjury, "I am requesting a restraining order for the following reasons: [¶] 1) Mother has used vulgarity against me, my mother and my family on 9/13/14. [¶] 2) She as threatened me and my family on 9/13/14. [¶] She has had other people threaten my life. [¶] After the last court date,[4] she continues to contact the school because she wants a report of the incident that took place there. [¶] In addition, she threatened to remove [N.L.] from school on June 18, 2014, violating a retraining [*sic*] order that was issued on 12/18/13. [¶] As such, I am fearful of [mother] and fear for my child's safety." Father did not base his request for a restraining order on mother's substance abuse, her false allegations that father sexually abused N.L., or her violation of a visitation order.

During the hearing, father's counsel stated, "It is not just about my client, it's about his daughter's safety, as well. This court is about child safety. [¶] . . . [¶] [A]fter [the petition was filed in this case] there have been a number of incidents in the school and most notably, June 18, 2014, where there was an altercation involving my client and mother. [¶] Not only that, the last time we [were] here, it's in father's declaration, mother contacted the school, again, trying to get information of an incident, that incident which took place on June 18, 2014. My client, in his declaration, states that mother cussed him out, cussed his mother out, cussed his family out. He indicates she threatened him. She threatens his family. [¶] Your Honor just has to make a finding that there is apprehension here and I believe my client has established that. More important, the fact that his child is placed with him. [¶] I think it's in the child's best interest to grant a restraining order. My client is not trying to prevent mother from seeing her child, that's not the issue here. In this case, the restraining order includes a visitation order. [¶] My client is willing to follow the terms of that visitation order. In fact, if Your Honor were to

---

**4** According to the record, the last hearing date immediately before October 15, 2014, was October 2, 2014.

4

liberalize mother's visits, my client would certainly follow that order. [¶] What my client fears is the continuing harassment by mother. Mother's complete lack of insight and her going to school and looking, I guess, for a report and her harassing school officials."

Mother's counsel said at that hearing, "The request for a temporary restraining order . . . references an incident that occurred at the school. There is a December 18th order from 2013 saying mother is not to attend the child's school. [¶] . . . [¶] The mother does hold educational rights. . . . [T]here is nothing preventing the mother from contacting the school. [¶] . . . [¶] She is appropriate during her visitation. There have been no concerns raised by the Department, no request by the Department to modify her visits and [father's counsel] references her erratic behavior; however, the sustained petition references her marijuana use . . . and generally calling in referrals on the father. None of those things have happened since the court sustained the petition. [¶] Additionally, [father's counsel] references an incident since the temporary restraining order was issued. There is zero evidence to support his statements or threats my client has made. Furthermore, nothing that he articulated references a specific theft to this child and there are no reports . . . that the father has made regarding [mother] violating the restraining order. So had she in fact threatened father or done anything since the original temporary order was issued on August 11th, there should be a police report or at least an incident report regarding mother violating the restraining order. [¶] So I would ask the court not to issue a restraining order preventing the mother from or limiting the mother's contact with the child. [¶] The child is safe in her placement, safe during the visits. There's no concerns mother is going to harm the child or take [the child] or do something else."

N.L.'s counsel replied, "Your honor, I have no objection to the child being taken off of the restraining order. [¶] I think that the concerns as to the mother's interaction or possible risk she would present to the child are not something that warrant a restraining order because they are not things that could be resolved be a restraining order. This is something that includes erratic behavior making allegations or contacting the school, and

5

additionally, I don't have any information, especially recent information, of any incident that would pose a risk if—as the father reports, the mother is contacting the school for information, even if it **is** overbearing or annoying to them, it does not place the child at risk."

The juvenile court issued the restraining order and included N.L. as a protected person. The juvenile court explained that it included N.L. in the restraining order because "[i]t's a safety risk to the father and he has care of the child. It's a safety risk to the child and I think that if this was a woman coming to court asking for this restraining order, there would not be an issue." The juvenile court granted mother monitored visits with N.L. "twice weekly for 3 hours each, minimum;" and the restraining order was "good for one year," expiring on October 15, 2015. Mother filed a timely notice of appeal.

Subsequently, a final judgment was filed acknowledging the restraining order, placing N.L. in father's custody, awarding mother six hours of weekly monitored visits supervised by "Rachel Green or other [person] approved by Father; if none available, professional monitor to be paid by mother," and terminating jurisdiction over N.L.[5]

The Department filed a letter with this court stating that it did not request the order that mother challenges on appeal and that it would not be taking a position regarding the appeal. The letter stated that the Department had contacted the appropriate attorneys from the Los Angeles Dependency Lawyers unit representing father to inform them of the Department's intention not to take a position in the appeal so that the Los Angeles Dependency Lawyers unit could determine whether it wished to request that its client be appointed counsel on appeal. Neither father, nor anyone on his behalf, has requested the appointment of counsel regarding this appeal. Father has not filed a brief in this matter.

---

[5]     We have taken judicial notice of the final judgment.

## DISCUSSION

### A.     Standard of Review

Several courts have applied the substantial evidence standard in reviewing the issuance of a restraining order under section 213.5.  (*In re Cassandra B*. (2004) 125 Cal.App.4th 199, 210-211; *In re B.S.* (2009) 172 Cal.App.4th 183, 193.)  Under that standard "we view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination.  If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed."  (*In re Cassandra B.*, *supra*, 125 Cal.App.4th at pp. 210-211.)  The court in *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1512, however, applied both substantial evidence and abuse of discretion standards—substantial evidence to support the facts and discretion to impose a restraining order.  (See *In re C.Q.* (2013) 219 Cal.App.4th 355, 364.)  The practical differences between these two standards in this context are not significant.  (See *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.)  Here, under either standard of review, the juvenile court erred.

### B.     Applicable Law

Section 213.5, subdivision (a) permits a juvenile court to issue an order "enjoining any person from . . . attacking, striking, . . . threatening, . . . harassing, . . . coming within a specified distance of, or disturbing the peace of the child [or any parent] . . . ."  "Issuance of a restraining order under section 213.5 does not require 'evidence that the restrained person has previously molested, attacked, struck, sexually assaulted, stalked, or battered the child.'  (*In re B.S.*[, *supra*,] 172 Cal.App.4th [at p.] 193.)  Nor does it require evidence of a reasonable apprehension of future abuse.  (*Ibid*.)"  (*In re C.Q.*, *supra*, 219 Cal.App.4th at p. 363.)  Section 213.5 is analogous "to Family Code section 6340, which permits the issuance of a protective order under the Domestic Violence Prevention Act [(Fam. Code, § 6200 et seq.)] . . . if 'failure to make [the order] may jeopardize the safety of the petitioner . . . .' [Citations.]"  (*In re B.S.*, *supra*, 172 Cal.App.4th at p. 194.)

A restraining order issued after notice and hearing may remain in effect up to three years. (§ 213.5, subd. (d)(1).)

Monitored visitation of a child is not incompatible with a restraining order. (*In re C.Q.*, *supra,* 219 Cal.App.4th at p. 363 [permanent restraining order requiring the father to stay away from the minor children "except during monitored visitation"]; *In re B.S., supra,* 172 Cal.App.4th at p. 188 [restraining order prohibiting the father from contacting the protected persons, "'except for brief and peaceful contact as required for court-ordered visitation of children . . .'"]); *In re Cassandra B*., *supra,* 125 Cal.App.4th at p. 206 [restraining order issued against the mother who nevertheless was entitled to reasonable monitored visitation].)

## C.    Analysis

Mother does not challenge the portions of the restraining order naming father as a protected person and requiring her to stay away from the home where father and N.L. live. Instead, mother contends that there was insufficient evidence to support the inclusion of N.L. as a protected person in the restraining order. We agree.

In *In re C.Q.*, *supra*, 219 Cal.App.4th 355, the Department responded to a referral of an incident of domestic violence reported by the mother (July 11, 2012, incident). According to the mother, the father abused her in the family home in the immediate presence of their 12-year-old daughter and while their other three daughters, one of whom was an adult, were in the home. (*Id*. at p. 357.) At the adjudication and disposition hearing that was held about three months after the July 11, 2012, incident, the mother requested a permanent restraining order against the father. (*Id*. at p. 362.) The juvenile court "issued a permanent restraining order requiring Father to stay away from Mother, the three minor children (except during monitored visitation), the children's school or childcare, and the home where Mother and the children live." (*Id*. at p. 363.) On appeal, the father contended there was insufficient evidence to support the issuance of a restraining order naming the three minor children as protected persons. (*Id*. at pp. 357, 363.)

8

The Court of Appeal reversed the portion of the restraining order naming the children as protected persons, stating, "There is no evidence indicating the children's safety might be in jeopardy absent their inclusion in the restraining order. [Citation.] . . . Father has monitored visitation with the children, and Mother is not permitted to monitor those visits. The children have stated they want visits with their father and are not afraid of him. There have been no reports that Father has engaged in any violent or otherwise inappropriate conduct since the July 11, 2012 incident." (*In re C.Q.*, *supra*, 219 Cal.App.4th at p. 364.) The court said that issuance of a restraining order under section 213.5 does not require that the person being restrained had "previously molested, attacked, struck, sexually assaulted, stalked, or battered the child." (*Id.* at p. 363.) The court added, "Issuance of the restraining order [is] not proper unless failure to issue the order might jeopardize the safety of the children. [Citation.]" (*Id.* at p. 365; compare, *In re Cassandra B.*, *supra*, 125 Cal.App.4th at p. 212 [sufficient evidence supported the issuance of a permanent restraining order, which included the daughter as a protected person when the mother "attempt[ed] to gain entry to the home of [the daughter's] caregivers without their knowledge, appear[ed] at [the daughter's] school and then following behind the caregiver's car after the daughter was picked up from school, together with her [having] threat[ened] to remove [the daughter] from her caregivers' home"]; *In re Brittany K.*, *supra*, 127 Cal.App.4th at p. 1512 [affirming a permanent restraining order requiring a grandmother to stay away from her grandchildren based on substantial evidence that the grandmother was molesting and stalking the children].)

As in *In re C.Q.*, *supra*, 219 Cal.App.4th 355, here there is no evidence that N.L.'s safety might be in jeopardy absent her inclusion in the restraining order. In support of his request for a restraining order, father stated that on June 18, 2014, mother "threatened to remove [N.L.] from school," and that on or about October 2, 2014, mother continued to contact N.L.'s school. Although father contended in support of the request for the restraining order that the December 18, 2013, order required mother "stay [a]way from . . . [N.L.'s] school" and mother's threats to remove N.L. from school were contrary

9

to its terms, the December 18, 2013, order was superseded by the juvenile court's June 18, 2014, order that both mother and father were N.L.'s educational rights holders. As such, mother had the right to communicate with the school.

California Rules of Court, rule 5.650(f)(1)(A)-(E) provides in pertinent part, "The educational rights holder . . . holds the rights . . . to all decisions regarding the child's education and developmental services, and is entitled:  [¶]  (A) To access records and to authorize the disclosure of information . . . ;  [¶]  (B) To be given notice of and participate in all meetings or proceedings relating to school discipline;  [¶]  (C) To advocate for the interests of a child or youth with exceptional needs . . . [;]  [¶]  (D) To attend and participate in the child's or youth's individualized family service plan, individualized education program, individual program plan, and other educational or service planning meetings; to consult with persons involved in the provision of the child's or youth's education or developmental services; and to sign any written consent to educational or developmental services and plans; and  [¶]  (E) [T]o consent to the child's or youth's individualized family service plan, individualized education program, or individual program plan, including any related nonemergency medical services, mental health treatment services, and occupational or physical therapy services . . . ."  (See also Cal. Rules of Court, rule 5.650(f)(2)(A)-(G) and (f) (3)(D)-(E).)  As an educational rights holder, mother could contact N.L.'s school and seek to remove N.L. from school.

In addition, there is no evidence in the record that mother had engaged in any violent or dangerous conduct toward, or made any threats to, N.L.  There is no evidence that mother's violent conduct or threats occurred in N.L.'s presence.  About one month after father filed his request for a restraining order, and about one month before the juvenile court issued the permanent restraining order that included N.L., the Department reported that mother's interaction with N.L. during their visits was favorable, N.L. appeared to enjoy spending time with mother, and N.L. said that she liked visiting with mother.  Mother has monitored visitation with N.L., and father is not permitted to monitor those visits.  There is no evidence that mother failed to obey the visitation order

or in any way abused her visitation rights.  The juvenile court erred by including N.L. as a protected person in the restraining order.

Although, as noted above, the court in *In re C.Q.*, *supra*, 219 Cal.App.4th 355, reversed the portion of the restraining order naming the children as protected persons, it did not modify the restraining order to state that the enjoined parent, the father, had to stay away from the children when they were in the physical presence of the mother. Because the restraining order requires mother here to stay away from father, mother necessarily is required to stay away from N.L. when the child physically is in father's presence.[6]  We remand the matter to the juvenile court to modify the restraining order in accordance with this opinion.

---

[6]    The logistics for N.L.'s monitored visits with mother will have to be such that mother is not in violation of the order to stay away from father in connection with such visitation.

**DISPOSITION**

The juvenile court's order is affirmed in part and reversed in part.  We remand the matter for the juvenile court to modify the restraining order to exclude N.L. as a protected person, but shall state that mother is required to stay away from N.L. when N.L. is physically in the father's presence.

**CERTIFIED FOR PUBLICATION**

                                    MOSK, J.

We concur:

TURNER, P. J.

GOODMAN, J.[*]

---

[*]     Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.