Filed 3/16/21  In re A.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A. M., a Person Coming Under the Juvenile Court Law. | C092699 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. J. M., Defendant and Appellant. | (Super. Ct. No. STKJVDP20170000382) |

Appellant challenges the juvenile court's restraining order requiring her to stay away from:  (a) her daughters A. M. and K. M. (both dependents of the court under § 300

of the Welf. & Inst. Code[1]); and (b) her daughters' caregivers, arguing there was insufficient evidence for the order. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

By July 6, 2020, the juvenile court had terminated appellant's parental rights to her daughters A. M. and K. M. Also on July 6, 2020, a social worker employed by San Joaquin County Child Protective Services (CPS) filed in the trial court a request for a restraining order against appellant, claiming appellant and her "representatives, ha[d] repeatedly gone to" the home of appellant's daughters' caregivers, which "caused the caregivers to have a reasonable fear for the safety of themselves and the children," given appellant's "documented volatility and mental health struggles."

In a September 2020 hearing at which appellant appeared telephonically, the social worker testified she sought the restraining order because, despite "several conversations with [appellant], as well as [appellant's] mother . . . , as well as a family friend . . . not to disturb the caregivers' home," all three women "ha[d] visited the caregivers' home insisting to see the minors."

The social worker explained that appellant's mother lived "[a]bout a mile" from the caregivers' home, and that -- though the social worker had previously told appellant's mother not to go to the caregivers' home unannounced -- appellant's mother went to the home in December 2019 "to deliver Christmas gifts to the minors."

Further, though the social worker had asked appellant not to go to the caregivers' home "[a]pproximately ten times" in the year before the hearing, appellant admitted to the social worker that she went to the caregivers' home multiple times, including in April 2020 (when appellant left a gift in the front yard of the home) and on consecutive days in May 2020, when (appellant told the social worker) appellant's chase of a vehicle that ran

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2

over her dog lead her to the caregivers' home, and she returned the next day and asked to see her daughters.

The social worker explained that appellant had a history of being aggressive with CPS during supervised visits with her daughters, leading to the summoning of law enforcement and appellant being escorted out of the CPS building. Also, the daughters' caregivers wanted the restraining order, as contact with appellant made them nervous and fearful.

Appellant had not been to the caregivers' home since May 2020, several months before the court issued a preliminary restraining order in July 2020. The social worker believed that, in the six months before the September 2020 hearing, appellant had been living a "transient lifestyle" moving between several states in the Western United States.

The social worker said that appellant's "behavior" and "mental instability" "pose[d] a danger in terms of becoming aggressive," "in the presence of the caregivers, as well as the minors."

While the social worker testified, appellant -- who was represented by counsel at the hearing -- tried to make an objection. The juvenile court told appellant that she would "have an opportunity . . . to speak" later in the hearing, "[s]o just wait." Appellant replied: "Are you okay, sir? You don't sound -- is someone holding a gun to your throat?"

Later, appellant testified she was living in Washington state and planned to remain there "for the rest of [her] life." She denied that she went to the caregivers' home on consecutive days in May 2020. She said the proposed restraining order against her was "a very disruptive idea for everybody," as it would be "very difficult" for her, "when trying to get a job or trying to get housing," because the restraining order might "pop[] up on [her] record."

3

Appellant wondered "why anyone would want to do this in this situation, especially since [appellant] ha[d] no criminal history of hurting anybody." "I don't plan to ever go back" to the caregivers' house, appellant testified.

On cross-examination, when counsel for CPS asked appellant if she had ever been to the caregivers' home, appellant replied: "I don't want to talk about it. I -- I just want to have a peaceful day."

When counsel asked appellant if she brought a gift to the caregiver's home in April 2020, appellant replied, "I will not answer that question."

After the juvenile court told appellant she "need[ed] to answer the question," and did not "have a choice" in the matter, appellant replied, "Is someone going to kill me if I don't answer?" The juvenile court responded: "No. Then I may end up issuing the restraining order." Appellant replied, "I do not want to answer that question, sir."

Later, after appellant attempted to invoke her Fifth Amendment right against self-incrimination, the juvenile court said: "It's a little late. You've already been a witness . . . ." Appellant replied: "Well, that's fine. I'm not a criminal, and I'm not a bad person. And I haven't done anything to harm anyone."

Counsel for CPS asked appellant if she "recall[ed] being charged on April 22nd, 2020, with threatening crime with intent to terrorize and assault[.]" "I plead the Fifth again," appellant answered.

In argument at the hearing, counsel for CPS said appellant "ha[d] been with" the juvenile court system "since around 2017," and observed that the "[c]ourt [wa]s fully aware of how her behaviors go up and down with her mental health." Appellant's "criminal history" was "almost three full pages long," and included "battery, [and] disorderly conduct." Appellant had "conditions that [we]re untreated, and she [wa]s not stable," counsel argued. "She is a danger to these children and to the foster parents. She knows where they live."

4

While counsel for the minors was agreeing with counsel for CPS, appellant interjected: "You guys are a danger to this country, all of you. You're destroying it." Appellant continued, until the court clerk cut her off at the judge's instruction: "I'm going to hang up because I'm not going to be abused by your court system anymore. You guys . . . continue to damage -- . . . ."

Appellant's counsel argued against the restraining order, explaining "[t]here was no aggression" noted in connection with appellant's contacts with the caregivers' home, and that appellant was living in Washington with "no desire to return" to California.

Before imposing a restraining order for the period of one year, the juvenile court noted its concerns with "the veracity of [appellant]," who "sa[id] she never showed up" at the caregivers' home.

### DISCUSSION

Appellant contends the juvenile court "abused its discretion in imposing a restraining order against [appellant] pursuant to section 213.5," as there was not "substantial evidence to support the court's decision." CPS disagrees.

We conclude there was substantial evidence for the juvenile court's decision.

"Section 213.5, subdivision (a) permits a juvenile court to issue an order 'enjoining any person from . . . attacking, striking, . . . threatening, . . . harassing, . . . coming within a specified distance of, or disturbing the peace of the child [or any parent] . . . .' 'Issuance of a restraining order under section 213.5 does not require "evidence that the restrained person has previously molested, attacked, struck, sexually assaulted, stalked, or battered the child." [Citation.] Nor does it require evidence of a reasonable apprehension of future abuse. [Citation.]' [Citation.] Section 213.5 is analogous 'to Family Code section 6340, which permits the issuance of a protective order under the Domestic Violence Prevention Act [(Fam. Code, § 6200 et seq.)] . . . if "failure to make [the order] may jeopardize the safety of the [child or current caretaker] . . . ." [Citations.]' [Citation.] A restraining order issued after notice and hearing may remain

5

in effect up to three years. (§ 213.5, subd. (d)(1).)" (*In re N.L.* (2015) 236 Cal.App.4th 1460, 1466.)

"In reviewing the restraining order, 'we view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination. If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed.' " (*In re C.Q.* (2013) 219 Cal.App.4th 355, 364.)

Here, a social worker testified that appellant: (i) had a history of being aggressive with CPS during supervised visits with her daughters; and (ii) admitted that -- despite the social worker's numerous requests -- she twice visited her daughters' caregivers' home in May 2020. The social worker further testified that appellant told her that, on one occasion, she was at the caregivers home coincidentally because she had been chasing a vehicle that ran over her dog. The social worker explained she thought a restraining order was necessary because appellant's "behavior" and "mental instability" "pose[d] a danger in terms of becoming aggressive," "in the presence of the caregivers, as well as the minors."

Appellant denied the May 2020 visits on direct examination and indicated that a restraining order was unnecessary because she planned to remain outside of California. But on cross-examination, appellant refused to answer questions about any visits she made to the caregivers' home, insisting that she was "not a criminal" and had not "done anything to harm anyone." When counsel for CPS asked appellant if she recalled being charged in April 2020 with "threatening crime with intent to terrorize and assault," appellant refused to answer.

Then, during argument at the hearing, appellant interrupted and disrupted the proceedings, threatening to "hang up" because of "abuse[] by [the] court system," prompting the juvenile court telephonically to silence her. And earlier in the hearing, appellant asked the trial court if "someone [was] holding a gun to [the court's] throat,"

6

and at a different moment queried whether -- if she refused to answer questions on cross-examination -- someone would "kill" her.

At the end of the hearing, the juvenile court questioned appellant's "veracity" because she maintained on direct examination that "she never showed up" at the caregivers' home.

This is substantial evidence supporting the juvenile court's implicit finding that failure to make the order may have jeopardized the safety of the minors or their caregivers: (i) appellant's aggressive behavior during the hearing buttressed the social worker's testimony of appellant's aggressive behavior with CPS and the social worker's fear that appellant would "becom[e] aggressive" in the presence of the minors and their caregivers; (ii) appellant's unannounced and unwanted visits to the home of her daughters' caregivers -- despite the social worker's repeated requests that appellant stay away from them -- reflected a willingness to ignore and transgress relevant norms; and (iii) appellant's indications that she would not return to California were insufficient, given the juvenile court's reasonable implicit adverse credibility finding as to appellant (in light of the conflicting testimony on the question whether appellant visited the caregivers' home in May 2020, and appellant's refusal to answer questions on the matter). (See *Jose O. v. Superior Court* (2008) 169 Cal.App.4th 703, 708, citing *In re Kristin W.* (1990) 222 Cal.App.3d 234, 253, for the proposition that "[a] reviewing court may imply a finding if substantial evidence supports it"]; cf. *Ocheltree v. Ozsgyanyi* (1962) 207 Cal.App.2d 344, 356 [affirming judgment against a party, and observing that "of no little significance [was] [the party's] courtroom conduct," wherein the party "was evasive," and "highly agitated and insulting" on the stand, and ultimately "walked out of the courtroom and did not return"; and quoting with approval the trial court's comments that it could " 'only draw inferences adverse to [the party] for his refusal to answer the . . . questions' " on cross-examination].)

7

## DISPOSITION

The restraining order is affirmed.

/s/
Robie, J.

We concur:

/s/
Blease, Acting P. J.

/s/
Krause, J.

8