Filed 4/24/23 In re L.C. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| In re L.C., a Person Coming Under Juvenile Court Law. | B316583 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP04164) |
| Plaintiff and Respondent, | |
| v. | |
| J.C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge. Affirmed.

Jesse McGowan for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Father appeals from the juvenile court's issuance of a three-year permanent restraining order pursuant to Welfare and Institutions Code section 213.5, subdivision (a), protecting both mother and daughter from father. He argues substantial evidence does not support naming daughter as a protected person.[1] We affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

The family consists of mother, father, and daughter (born 2021). Father is estranged from his two older children, who live in Oklahoma and are not at issue in this case. The family was brought to the attention of the Los Angeles County Department of Children and Family Services (DCFS) due to a domestic dispute.

**1.     *Domestic Violence Between the Parents***

On August 1, 2021, while at a social gathering, father became upset and berated mother. Both parents had been drinking alcohol. On the way home, father ordered mother out of the car and drove off, leaving mother stranded. Mother then contacted a friend, who picked her up and drove her home.

Father arrived first to their apartment that night and began arguing with maternal grandmother, who was babysitting then-two-week-old daughter. Father yelled at maternal grandmother to leave the residence, and he called the police. After mother arrived home, the police responded to father's call and instructed everyone to calm down.

After the police left, mother entered the bedroom to check on daughter. As mother reached to pick up daughter, father

---

[1]     All subsequent statutory references are to the Welfare and Institutions Code, unless indicated otherwise.

2

grabbed mother by her arm and flung her towards the bed. Daughter was not yet in mother's arms during the physical altercation. Mother fought father off but was unsure if he hit her. Mother's family members, who were in the home, rushed to her aid and found father's ring stuck in mother's hair. One of the family members restrained father while police were again contacted. Officers found two loaded firearms belonging to father inside the bedroom where the altercation took place: one on top of a chair and the other inside a closet. Police arrested father for battery and temporarily took possession of father's two firearms.

Two days after the incident, father admitted to DCFS that "everything in the police report is true" but was reluctant to provide the social worker any details. Father denied all substance use and stated he had not had any alcohol or drugs during the incident with mother and her family. Father denied threatening or physically engaging with anyone. He said that he was attempting to talk to mother privately in the bedroom and mother just started yelling and screaming. Father stated that his ring became entangled in mother's hair but he was uncertain how that happened.

On August 9, 2021, when interviewed a week after the incident, mother showed DCFS that she had obtained a temporary restraining order from the family law court protecting both her and daughter from father.[2] Mother told DCFS that

---

[2]     Mother had secured the temporary protective order from the family law court earlier that day. In her restraining order application, mother alleged that father slammed a bedroom door against her leg, resulting in a scrape to her right knee. Mother stated she did not feel safe because father legally owned two

father's behavior had become increasingly unpredictable, making her uncomfortable and fearful for her safety. Mother showed the social worker several videos depicting father locking mother out of the bedroom to keep her from infant daughter for long stretches of time, removing mother's bed covers so she could not sleep, pulling mother's leg, and demanding she get up to engage in an argument. Mother felt threatened when father made unprovoked comments like, "if we cannot be together with the baby, then neither of us are going to have the baby," and "I will make sure the baby is taken away and put in foster care."

DCFS also interviewed a family friend, who reported that during verbal exchanges with others, father made "veiled threats" about using a gun to protect himself. For example, while motioning to his waistband, father stated to others: "if that's how you really feel about it, then run up on me, I bet you I'll protect myself. I got my piece and I will use it. You're in my house and I will protect myself."

**2.** ***Section 300 Petition and Detention Hearing***

On September 7, 2021, DCFS filed a section 300 petition on behalf of daughter, alleging that the parents had a history of domestic violence, and that there were two recent incidents in which father was the aggressor. DCFS also alleged that father abused marijuana, and negligently left two loaded firearms within access of the child.

The next day, mother filed a second restraining order application – this time with the juvenile court – again listing

---

guns. However, mother did not aver the existence of other incidents of violence or conflict. On September 2, 2021, the family law court dismissed the application for lack of sufficient evidence.

4

herself and daughter as protected persons. In addition to the August 1, 2021 incident we have described, mother alleged that there was another incident on August 8, 2021, where father pushed and locked mother out of the bedroom.

On September 9, 2021, the juvenile court detained daughter from father, kept physical custody with mother, and issued a temporary restraining order protecting both daughter and mother from father. The juvenile court scheduled a hearing on jurisdiction, and on whether a permanent restraining order should issue.

### 3. *Subsequent Investigation*

In addition to confirming her prior statements regarding the August 1, 2021 incident, mother told the social worker that father had been verbally and emotionally abusive for a long time prior to the physical abuse. For example, father called her " 'pathetic, lame and a " 'hoe' " and told her she was " 'broke and dirty.' " Mother indicated that as the family suffered financially during the pandemic, father became more and more aggressive.

Mother reported to DCFS that father had threatened her and some of her relatives' boyfriends with guns in the past. Mother stated that about a year earlier, father stood over mother and choked her while she was sitting on the couch because she had confronted him about cheating. Mother tried to get up from the couch and leave, but father forced her back down and grabbed her by the neck.

Mother described another incident that occurred on August 6, 2021. On that date, while mother held daughter in her arms, father grabbed her by the leg. When mother tried to kick father off, father attempted to get on top of mother while she was holding daughter in her right arm. Mother threw daughter onto

the bed to protect herself as father swung at her. Daughter was not injured during this incident.

Father denied the domestic violence. He possessed two guns and insisted he kept them in a closet that was inaccessible to daughter. Father denied mother's claim that father carried a revolver on his person at all times.

### 4. *Jurisdiction and Disposition Hearing*

The section 300 hearing took place on November 10, 2021. The court admitted the jurisdiction/disposition report, the detention report with attachments, and DCFS's exhibits. The court also admitted into evidence father's exhibits: a September 2, 2021 family court minute order showing the dismissal of mother's first protective order petition for insufficient evidence, a bail bond receipt showing mother paid father's bail, a parenting class progress letter, proof of enrollment in a domestic violence course, and a document showing completion of a parenting program.

Mother and maternal grandmother did not testify; counsel relied on the facts in the DCFS report that had been admitted. Father testified that on August 1, 2021, he and mother went out with friends and he got into an argument with mother about money. Mother was upset that father confronted mother's cousin when he did not pay for his portion of the food. At the end of the evening when they dropped off a friend, mother, still crying, voluntarily left the car father was driving. He then drove home and told the maternal grandmother, who was babysitting, that she could leave. Because the maternal grandmother refused to leave, father called law enforcement. Next, police officers, mother, and other family members arrived home. The maternal family informed law enforcement that father had a gun on his

6

person. When law enforcement searched father, no gun was found.

Father testified that after police left, he put daughter down to sleep. Mother then went to pick her up, saying she is leaving. Father stated he attempted to stop mother, and his ring became caught in mother's wig. At that point, mother's sister and her cousin's boyfriend joined in a physical altercation with father. The police returned and arrested father. Five hours later, mother bailed father out of jail.

Father also testified about the August 8, 2021 incident. He stated that on that day, the parents were still cohabitating and mother returned home under the influence at 1:00 a.m. Father explained he locked the door to their room, and mother tried to break down the door to enter. In doing so, mother skinned her knee. Mother left, and later had father served with a restraining order.

Father denied that he was ever under the influence while supervising daughter. Father testified he owned two registered guns that he kept in a cabinet or on the dresser. However, he intended to keep the guns in a safe in the future.

The juvenile court heard closing arguments, and then sustained the domestic violence allegations, stating that it did not find father credible. The juvenile court proceeded to disposition, admitting all exhibits that had been offered. Father submitted on removal of daughter from his care.

The court declared daughter a dependent of the juvenile court, removed her from father's custody, and placed her with mother. The court ordered father to attend a domestic violence program, engage in individual counseling, and participate in drug testing. The court granted father monitored visitation two to

7

three times per week for two to three hours at a time, with a DCFS-approved monitor.

Father's counsel asked the juvenile court to deny mother's request for the restraining order. He argued that father had not harassed or stalked mother, the family court denied mother's first request for a restraining order, and there had been no new violence since the family court's order. The juvenile court pointed out that it did not have the facts that were before the family court or know why the family court denied mother's first restraining order. The court highlighted that, since that denial, DCFS had gathered a lot more evidence in support of the restraining order that the family court did not have before it. The juvenile court concluded substantial evidence supported the petition and took judicial notice of the sustained domestic violence allegations, which included the fact father possessed firearms and had threatened people with them.

The restraining order required father to stay 100 yards away from mother and daughter (except for court ordered visitation), their home, vehicle, job, school, and childcare facility. The order allowed father monitored visitation with daughter, and permitted DCFS to liberalize father's visits. The order also prohibited father from owning or possessing firearms.

Father appeals.

## DISCUSSION

Father does not challenge the court's findings that he perpetrated domestic violence against mother in daughter's presence or the issuance of the order restraining him from contacting or being near mother. Father disputes only the order's

inclusion of daughter as a protected person, and we limit our discussion to that issue. [3]

**1.** ***Applicable Law***

Pursuant to section 213.5, subdivision (a), the juvenile court may issue an order "enjoining a person from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, . . . destroying the personal property, contacting, . . . or disturbing the peace of the child[.]" The statute "also permits the court to issue orders including the child's parent as a person protected from the behaviors listed above and excluding the restrained person from the child's home." (*In re C.Q.* (2013) 219 Cal.App.4th 355, 363 (*C.Q.*).) "Monitored visitation of a child is not incompatible with a restraining order." (*In re N.L.* (2015) 236 Cal.App.4th 1460, 1466 (*N.L.*).)

"Issuance of a restraining order under section 213.5 does not require 'evidence that the restrained person has previously molested, attacked, struck, sexually assaulted, stalked, or battered the child.' [Citation.] Nor does it require evidence of a reasonable apprehension of future abuse." (*C.Q., supra,* 219 Cal.App.4th at p. 363.) The court may identify a child as protected person where the "evidence indicate[s] the children's

---

[3] In the Statement of Appealability section of his opening brief, father states, "On November 22, 2021, Jeffrey C. ("father") filed a notice of appeal from the hearing held November 11, 2021, at which the the (*sic*) juvenile court removed [daughter] from his care and issued a permanent restraining order. [Citation.] On his notice of appeal, father indicated his intent to challenge the restraining order (among other orders)." Father's opening brief addresses only the restraining order as it pertains to daughter. He filed no reply brief.

9

safety might be in jeopardy absent their inclusion in the . . . order.  [Citation.]"  (*Id*. at p. 364.)

"In reviewing the issuance of a restraining order under [section 213.5], 'we view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination.  If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed.'  [Citations.]"  (*In re Bruno M.* (2018) 28 Cal.App.5th 990, 996–997, fn. omitted (*Bruno M.*).)

## 2.    *Substantial Evidence Supports the Restraining Order*

Father contends no reasonable or credible evidence showed daughter's safety would be jeopardized absent her inclusion in the restraining order since father's violent behavior was never directed towards daughter.  We disagree with this characterization of the record.

Daughter was repeatedly exposed to father's violence, was in harm's way during at least two incidents, and was used by father to exercise power over mother.  On August 1, 2021, when mother reached to pick daughter up out of her crib, father grabbed mother by the arm, and threw her on the bed.  He did this all while a loaded firearm sat unsecured, feet away from the physical altercation and from sleeping infant daughter.

On August 8, 2021, while mother held daughter, father grabbed mother's leg and then tried to get on top of mother.  Mother had to toss daughter onto the bed to defend herself from father.  At minimum, father exhibited a willful disregard for daughter's safety during this assault.  (See *In re B.S.* (2009) 172 Cal.App.4th 183, 194.)

10

On another occasion, father locked mother out of the bedroom where he was with daughter. In other instances, father expressed that if he could not have daughter, he would make sure mother could not have her. Father essentially used daughter to exercise power and control over mother. Based on this evidence, the juvenile court reasonably concluded daughter's safety would likely be in jeopardy without her inclusion in the order.

In asserting the evidence was insufficient, father likens the present case to *C.Q., supra,* 219 Cal.App.4th 355. In *C.Q.,* the mother reported to the police that the father struck her with a closed fist while their three children (ages 16, 12, and 11 years old) were present in the home, and that one child witnessed the incident and intervened in it. (*Id.* at p. 358.) The mother also asserted that all three children witnessed the father strike and bruise her arm a year prior. (*Id.* at pp. 358–359.) However, in interviews with DCFS, the children denied knowledge of any domestic violence. (*Id.* at p. 359.) The children were not afraid of their father and wanted visits with him. (*Id.* at p. 364.) At the jurisdiction and disposition hearing, the juvenile court issued a restraining order requiring the father to stay away from the mother, the children (except during monitored visits), the children's school or childcare, and the family home where the mother resided with the children. (*Id.* at p. 363.) The Court of Appeal reversed the part of the restraining order naming the children as protected persons for lack of evidence indicating the children's safety would be jeopardized absent inclusion in the restraining order. (*Id.* at pp. 357, 364.)

Father also relies on *N.L., supra,* 236 Cal.App.4th 1460. There, DCFS filed a section 300 petition on behalf of a six-year-old child due to her mother's drug use and repeated false

11

accusations that the father sexually abused the child. (*Id.* at p. 1462.) A month after the court declared the child a dependent, removed her from the mother's custody, and ordered her to home-of-parent father, the father sought a restraining order requiring the mother stay away from the father and the child, their residence, father's workplace, father's vehicle, and the child's school. In support of the restraining order, the father described an incident where the mother had attempted to remove the child from school. He also stated that the mother had threatened him, struck him, and pulled his hair. (*Id.* at p. 1463.) After a contested hearing, the juvenile court issued the restraining order and included the child as a protected person. (*Id.* at p. 1465.) The mother appealed the portion of the order including the child as a protected person. (*Id.* at p. 1467.) The Court of Appeal reversed, pointing out that per a recent order of the juvenile court, both parents were the child's educational rights holders, and thus the "mother could contact [the child]'s school and seek to remove [the child] from school." (*Id.* at p. 1468.) The Court of Appeal observed that the mother had never engaged in violent or dangerous conduct towards the child, nor had any such conduct occurred in her presence. (*Id.* at p. 1469.)

For obvious reasons, *C.Q.* and *N.L.* are inapt. Unlike the children in those cases, daughter here was physically near father's violent conduct on multiple occasions (once being tossed on a bed because father tried to get on top of mother). Father also inhibited mother's access to daughter during a conflict with mother. Daughter's tender age (an infant, not school-age children as in *C.Q.* and *N.L*) makes her particularly vulnerable and helpless in the presence of father's violence, lack of self-control, and manipulation.

This case more closely resembles *Bruno M., supra,* 28 Cal.App.5th 990. There, the father argued insufficient evidence supported the inclusion of his two children in a section 213.5 restraining order. (*Id.* at p. 997.) Acknowledging the children were present during his violence, the father nonetheless asserted he " 'was never aggressive with [them] and [they] were never in the line of fire' of his assaults on [the] mother." (*Ibid.*)

The Court of Appeal held the restraining order was supported by substantial evidence that father disturbed the peace of the children. (*Id.* at p. 997.) The Court of Appeal observed the children frequently witnessed the abuse, the five-year-old yelled at father to stop during one incident, and the two-year-old covered her ears during another. (*Ibid.*) The Court explained, "while the children had not *yet* been hurt during these altercations, the court could properly consider the extent and violence of father's attacks on mother when issuing the order. That is, the juvenile court 'could reasonably infer, from the father's tendency to resort to violence as well as from his evident lack of impulse control, that he might be a threat to [the children's] safety. Such a threat could arise, even in the mother's absence, if the father got angry with another adult or with [the children]. Even assuming an opposite inference might be equally reasonable, we are not authorized to second-guess the juvenile court on this point.' " (*Id.* at p. 998.)

More egregious than the facts in *Bruno,* daughter here was in the "line of fire" during one of father's attacks. As in *Bruno M.,* the record in this case reflects father " 'disturbed the peace' " of and endangered daughter by engaging in violent conduct toward mother in daughter's presence and by preventing mother's access to daughter. (*Bruno M., supra,* 28 Cal.App.5th at p. 997.)

13

Father argues that *Bruno* misstates the law because the order protecting the child must be based on more than disturbance of the child's mental and emotional peace, and that "destroying the 'emotional calm' of a child does not necessarily relate to the child's safety." Father's predicate facts are belied by the record. The evidence was substantial that father did more than disturb daughter's mental and emotional peace—father attacked mother while mother held infant daughter and caused mother to toss the child on the bed during one incident. Viewing the evidence in the light most favorable to the respondent, the juvenile court could reasonably have found that father's pattern of conduct would continue in the future (particularly in light of his expressed intent to deprive mother of the child) and imperil daughter's physical well-being.

## *DISPOSITION*

The juvenile court's order is affirmed.


RUBIN, P. J.

WE CONCUR:


BAKER, J.


KIM, J.


14