Filed 2/23/24  In re Fernando L. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re FERNANDO L. et al., Persons Coming Under the Juvenile Court Law. | B326775 (Los Angeles County Super. Ct. No. 20CCJP05910) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  F.L.,  Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge.  Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

F.L. (father) mounts a substantial evidence challenge to the portion of the juvenile court's restraining order protecting his children, Fernando and Andrew. We conclude the evidence supported the juvenile court's inclusion of Fernando and Andrew as protected persons.

At the beginning of the proceedings, father described himself as "a very jealous person and when I am [on] drugs it is worst [*sic*]. I was on meth. . . . I have been in and out of jail a lot." During the dependency proceedings, father enrolled in drug treatment programs, made significant progress, visited the children consistently, and developed insight into how his anger affected Fernando and Andrew. Prior to the juvenile court's issuance of a restraining order, however, father relapsed and began using controlled substances, displayed erratic behavior, was unable to control his anger, trespassed around mother's home, and refused to leave mother's hospital room. Notwithstanding his prior progress, because father's conduct at the time the juvenile court issued its restraining order justified protecting the children, we affirm.

## BACKGROUND

Father is the presumed father of Fernando and Andrew (sometimes referred to as the children). Father has an adult daughter, who is not a party to this proceeding. Mother's daughter Ariana, the children's half sibling, was a dependent of

2

the juvenile court but is not included in father's challenge to the juvenile court's restraining order.

## 1. *Petition*

On November 3, 2020, the Los Angeles County Department of Children and Family Services (DCFS) filed a Welfare and Institutions Code[1] section 300 petition identifying Ariana, Fernando, and Andrew as dependent children. As later sustained, the petition alleged mother and father "engaged in a violent altercation in the children's presence." Father threw a beer bottle at mother and hit mother with the beer bottle. Mother shot at father with father's firearm. At that time, Fernando was three and Andrew one year old. When police arrived to investigate the referral, father fled.

Social workers did not interview Fernando or Andrew about the incident because the children were too young to provide meaningful statements. Father's adult daughter indicated Fernando was scared and crying. An undated multidisciplinary assessment of Fernando in advance of the jurisdictional hearing indicated he needed mental health therapy because he displayed aggression, sadness, and anxiety. A social worker described mother and father's volatile relationship as placing the children at risk of emotional and physical harm, a description father does not dispute.

## 2. *Father's history prior to the dependency proceedings*

Father's criminal history dates back to 1998 and includes possession of a controlled substance, first degree burglary, grand

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

theft auto, grand theft, transporting a controlled substance, carrying a loaded firearm in a public place, driving while under the influence, possession of a controlled substance for sale, possession of a firearm, receiving stolen property, hit and run with property damage, taking a vehicle without the owner's consent, forgery, assault with a firearm, and corporal injury to a spouse or cohabitant. Father was a gang member.

Mother told a social worker she and father had a history of domestic violence, which included father's threats to kill her. Mother acknowledged that the children observed the domestic violence incident leading to the dependency proceedings. Mother also reported that father handed her a gun and she used it to fire at him. According to mother, when she fired the gun, she was not trying to kill father but was trying to scare him. Mother reported father "was always on drugs." The first time father hit mother she was seven months pregnant, and he broke her nose. On another occasion, father said in front of Andrew, "[J]ust know you are going to get fucked up . . . ." Later that day, father hit mother's neck.

According to maternal grandfather, the night before the incident that gave rise to the dependency proceedings, father stayed "outside" mother's home "all night long." Also according to maternal grandfather, on a prior occasion, father broke mother's nose.

Maternal aunt reported father hit mother with a bat in 2018.

3. *Father makes progress during the dependency proceedings*

In May 2021, father lived at the Salvation Army's adult rehabilitation center. In January 2022, DCFS reported father

4

had completed his drug rehabilitation program.  Afterwards, father enrolled in a 12-step program as well as relapse prevention, parenting, health education, domestic violence, anger management, and life skills courses.  He also attended Alcoholics Anonymous meetings and individual counseling.  Between September 4, 2021 and November 22, 2021, father had 13 negative drug tests.  When father learned he mistakenly had enrolled in a domestic violence class for victims, he enrolled in a class for perpetrators.  Father expressed an interest in spending more time with his children and in more responsibility for their care.

In April 2022, DCFS liberalized father's visits so that father could visit without a monitor.  In April 2022, father spoke to a social worker and indicated he did not want his children to see him angry.  The social worker reported, "[F]ather seems to be working on himself and attempting to be more involved in his children's lives."

In May 2022, DCFS reported father continued to test negative for all controlled substances.  Father also continued to work with a sponsor and to attend individual sessions with a licensed therapist.  Father visited the children on Wednesdays for three hours and on Sundays for six hours.  DCFS reported that father was in compliance with his case plan and continued to test negative for controlled substances  DCFS further reported father understood "the role his actions had and the impact his decisions had on his children.  The father now takes ownership for his actions and acknowledges his mistakes along with working on better responses and better outlets when he becomes upset."

Fernando stated he liked to visit father; Andrew was too young to provide a statement. A social worker reported father had developed a bond with Fernando and Andrew.

**4.** *Father relapses*

In August 2022, father stopped testing for controlled substances. In October 2022, DCFS filed a request to convert father's unmonitored visitation to monitored visitation. Father failed to appear seven times at his scheduled drug tests. Mother reported father was trespassing where mother lived. In November 2022, the court ordered monitored visits.

In December 2022, DCFS reported that father's visits were inconsistent. Father's adult daughter told mother that father had relapsed. Mother spoke to father, and father told her not to tell the social worker about his relapse. Although father tested negative for controlled substances, mother told the social worker that father had purchased urine for his drug test.

In December 2022, DCFS reported that in the middle of the night, Ariana saw father looking through mother's bedroom window. Ariana believed she was having a nightmare, but security footage confirmed that father had jumped over a fence and stood outside mother's window.[2] Security footage showed father jumping over the fence and looking into the bedroom window. Mother also reported that father harassed her while she was hospitalized. When mother asked father to leave, father said, "[Y]ou're lucky I don't fuck you up right now." A social worker concluded that father's inconsistent testing and erratic behavior suggested he had relapsed.

---

[2] The security video was an exhibit in the juvenile court but is not included in the record on appeal.

**5.**   *The juvenile court grants a restraining order restraining father from Fernando and Andrew among others*

On November 28, 2022, mother applied for a restraining order against father.  In her application, mother described the following conduct:

"On or about 10/20/2022, [father] jumped over the exterior fence of the family home and peered into a bedroom window.  This is captured on private video surveillance footage. . . .  [Half sister] was frightened by [father's] presence and ran to Maternal Grandfather, telling Maternal Grandfather that she had a nightmare about someone looking into the windows of the family home.  This incident was reported to law enforcement.

"On or about 10/22/2022, [father] went to Mother's hospital room without invitation.  Before Mother could ask [father] to leave, [father] reviewed Mother's private medical documents, searched in the bathroom for other visitors, and persistently asked Mother who else was with her in the hospital.  Once Mother asked [father] to leave, [father] told Mother, 'You're lucky I don't fuck you up,' or words to that effect.  This incident was also reported to law enforcement.

"Father's recent harassment and threats of violence have caused Mother, her children, and the extended maternal family—who reside in the family home—to feel fearful, harassed, and/or annoyed.  Father's attempt to access the family home, in particular, places the entire family—including Maternal Grandfather, Maternal Great Aunt, and Maternal Cousin—at risk for [father's] escalating conduct, which corresponds to his long history of domestic violence against Mother."

Mother requested that the restraining order include as protected persons, herself, Fernando, Andrew, the children's half sister, maternal grandfather, and maternal great aunt, and a cousin.

Mother also proffered exhibits with text messages from father. One read, "Will be over your head until the time is right for me to handle my bizz with you. You wanna disrespect on a whole nother level and think that shit is just gonna be whatever . . . never. Just know it ain't over aiit no matter how much time goes by . . . Piece of shit like you needs to be dealt with . . . go and show who ever you want. Idgaf. Fuck them too!!"

On December 8, 2022, the juvenile court granted a temporary restraining order.

At the January 11, 2023 hearing, father stipulated he sent the above-described text messages and that it was he on the video jumping the fence and looking into mother's home. Father agreed to the restraining order as it pertained to mother but objected to including Fernando and Andrew. Mother's attorney, the children's attorney and the Department urged the juvenile court to include Fernando and Andrew.

On the same day, the court granted the restraining order, including Fernando and Andrew. The court ordered father to stay away from Fernando and Andrew, their home, school, and child care facility. It carved out an exception for father's monitored visitation.

The court stated, "[There] is recent and additional concerning behavior by the father as to the home where the children and mother and other family members live. . . . [¶] I'll note that the video is concerning. It shows what was stipulated as father essentially lurking around the family home where

mother and the children and the other family members live." The court described father's behavior as "stalking-type behavior."

Father timely appealed from the order granting a restraining order.[3]

## DISCUSSION

On appeal, father challenges the restraining order only as to its inclusion of Fernando and Andrew as protected persons. Father argues there was no evidence that either Fernando or Andrew "suffered previously from past domestic violence perpetrated by Fernando."

" '[A]ppellate courts apply the substantial evidence standard to determine whether sufficient facts supported the factual findings in support of a [section 213.5] restraining order and the abuse of discretion standard to determine whether the court properly issued the order.' [Citation.] When an appellant challenges 'the sufficiency of the evidence, . . . [i]f there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed.' [Citation.]" (*In re S.G.*, *supra*, 71 Cal.App.5th at pp. 670–671.)

---

[3] On the same day the court issued the permanent restraining order, the court also terminated jurisdiction and permitted father monitored visitation. Monitored visitation "is not incompatible with a restraining order." (*In re N.L.* (2015) 236 Cal.App.4th 1460, 1466.) Father does not appeal from the termination of jurisdiction. Even though father did not appeal from the order terminating jurisdiction, the challenge to the restraining order is not moot. (*In re S.G.* (2021) 71 Cal.App.5th 654, 658.)

**Legal Background**

"Section 213.5 governs the issuance of restraining orders by the juvenile court. Thereunder, the juvenile court may issue, inter alia, an order 'enjoining any person from molesting, attacking, striking, stalking, threatening, . . . battering, harassing, telephoning, . . . contacting, . . . coming within a specified distance of, or disturbing the peace of . . . any parent . . . of the child [who is the subject of dependency proceedings], regardless of whether the child resides with that parent, . . . in the manner provided by Section 6300 of the Family Code.' [Citation.]" (*In re S.G.*, *supra*, 71 Cal.App.5th at p. 670.) Section 213.5 also authorizes the court to enjoin the person from such conduct directed at a dependent child. (§ 213.5, subd. (a).)

"Issuance of a restraining order under section 213.5 does not require 'evidence that the restrained person has previously molested, attacked, struck, sexually assaulted, stalked, or battered the [petitioner or person to be protected].' [Citation.] It may be sufficient to show that the person to be restrained 'disturb[ed] the peace' of the petitioner (§ 213.5, subd. (a)), meaning he or she engaged in conduct that destroyed the petitioner's ' " 'mental or emotional calm.' " ' [Citation.] Section 213.5 is analogous 'to Family Code section 6340, which permits the issuance of a protective order under the Domestic Violence Prevention Act . . . if "failure to make [the order] may jeopardize the safety of the petitioner." ' [Citations.]" (*In re S.G.*, *supra*, 71 Cal.App.5th at p. 671.) A juvenile court may identify a child as a protected person when the "evidence indicate[s] the

children's safety might be in jeopardy absent their inclusion in the . . . order."[4] (*In re C.Q.* (2013) 219 Cal.App.4th 355, 363–364.)

*Bruno M.* applied the forgoing principles in a similar case. In *Bruno M.*, the father challenged only that portion of the restraining order protecting his children and argued they "were 'never in the line of fire' " when he beat the mother. (*In re Bruno M.* (2018) 28 Cal.App.5th 990, 992 (*Bruno M.*).) The father in *Bruno M.* abused the mother about three times a month and was arrested for inflicting corporal injury on a spouse/cohabitant. (*Ibid.*) Five-year-old Bruno was scared when his parents fought and worried about the mother. (*Id.* at p. 994.) Bruno mimicked the father's aggressive tendencies. (*Ibid.*) The father admitted his history of violence with mother but emphasized that the violence occurred before the children were born. (*Ibid.*)

The *Bruno M.* court stated that physical harm to the protected child is not a prerequisite to including the child in a restraining order; it was sufficient that the father had " 'disturbed the peace' " of his children. (*Bruno M.*, *supra*, 28 Cal.App.5th at p. 997.) Among other things, the court explained that the juvenile court "could properly consider the extent and violence of father's attacks on mother when issuing

---

[4] Father's initial statement that the law requires "a showing of past abuse" is not correct. Father misreads *In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 228, which states a trial court "*may*" issue a restraining order upon proof of past acts of abuse. (*Ibid.*, italics added.) "[W]hile evidence the restrained person has previously stalked, attacked, or inflicted physical harm on the protected child 'is certainly sufficient' to justify issuance of a restraining order under section 213.5, issuance of a restraining order does not *require* such evidence." (*Bruno M.*, *supra*, 28 Cal.App.5th at p. 997.)

the order.  That is, the juvenile court 'could reasonably infer, from the father's tendency to resort to violence as well as from his evidence lack of impulse control, that he might be a threat to [the children's] safety.  Such a threat could arise, even in the mother's absence, if the father got angry with another adult or with [the children].  Even assuming an opposite inference might be equally reasonable, we are not authorized to second-guess the juvenile court on this point.'  [Citations.]" (*Id*. at p. 998.)

Similar to *Bruno M*., here substantial evidence supported including Fernando and Andrew in the restraining order.  The juvenile court could reasonably infer that father was a threat to the children's safety and that failure to include the children in the restraining order may jeopardize their safety.  Father suffered a conviction for abuse of a spouse/cohabitant, admitted he had an anger problem, and had insight into this problem only when he was not using controlled substances, but nevertheless started using controlled substances again during the time period proximate to the hearing on the restraining order.  In addition, after his relapse, father exhibited erratic and sometimes threatening behavior towards mother in various locations, including the children's home.  Father's threats toward, and physical abuse of mother were serious, including threats to kill her, breaking her nose, hitting her with a bat, and a text message that he would "deal[ ] with her."  Father's violence toward mother sometimes occurred in the children's presence.  Although the children were too young to provide statements regarding their reactions to father's conduct, eyewitnesses saw Fernando's fear of father and observed Fernando's aggressive tendencies mimicking father's aggression.  The juvenile court could reasonably infer

12

from father's above conduct that absent the restraining order, father jeopardized the children's safety.

As in *Bruno M.* here, the evidence also shows that father disturbed the peace of the children. "In this context, *disturbing the peace* means ' "conduct that destroys the mental or emotional calm of the other party." [Citation.]' [Citation.]" (*Bruno M.*, *supra*, 28 Cal.App.5th at p. 997.) The children were present when father handed mother a gun to shoot him. When he was sober, father recognized that his anger had a deleterious effect on his children. Yet, after he relapsed, father trespassed around the house where the children lived and reverted to his impulsive, abusive conduct.

Father's contrary arguments are based on reading the record in the light most favorable to him, not in the light most favorable to the juvenile court's order. The children observed violence father perpetrated on mother, including the incident precipitating the dependency petition. The fact that, at the time of those incidents, the children were too young to make a meaningful statement is not equivalent to the absence of any harm, but instead shows a greater need to protect the children. Although father correctly points out that Fernando and Andrew did not observe father's most recent harassing behavior that the juvenile described was akin to stalking the family home, father's prior inability to control his conduct in front of the children supported the juvenile court's order that the children needed protection from him.

Father's reliance on cases in which there was "no evidence that [the child's] safety might be in jeopardy absent [the child's] inclusion in the restraining order" is misplaced. (See *In re N.L.*, *supra*, 236 Cal.App.4th at p. 1468; *In re C.Q.*, *supra*,

13

219 Cal.App.4th at p. 364.)  Here, as summarized above, there was evidence that the children's safety was in jeopardy absent inclusion in the restraining order and evidence that father disturbed the peace of the children.  At the time the court issued the restraining order, father's conduct warranted protecting his children.

## DISPOSITION

The restraining order is affirmed.
NOT TO BE PUBLISHED.


                                                BENDIX, J.


We concur:


        ROTHSCHILD, P. J.


        CHANEY, J.