Filed 2/8/2024

# CERTIFIED FOR PARTIAL PUBLICATION*

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re LILIANNA C., a Person Coming Under the Juvenile Court Law. | B324755 (Los Angeles County Super. Ct. No. 18CCJP05147B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. TORI C., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed in part; reversed in part.

---

\*      Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication as to all parts except Parts I.B. and II. of the Discussion.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

In this juvenile dependency case, Tori C. (mother) attacks aspects of the three-year restraining order issued when the juvenile court asserted jurisdiction over her then four-year-old daughter, Lilianna C. (Lilianna). In resolving this attack, we necessarily confront a question of statutory construction— namely, does Welfare and Institutions Code section 213.5,[1] which is the statute that authorizes a juvenile court to issue a restraining order protecting "the child or any other child in the household," grant that authority only in cases where a petition has been filed by a parent's probation officer or, instead, in any case where a petition is filed? The literal text of section 213.5— through its cross-reference to section 311—would appear to limit that authority to cases where the petition is filed by a probation officer. We reject the literal interpretation, both because it leads to an absurd result and because our dive into the legislative history reveals that the insertion of section "311" was a drafting error. Indeed, for just over 27 years, courts applying section 213.5 have implicitly come to the same conclusion. We partially publish to make our rejection of the literal interpretation explicit,

---

1  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

and hold that a juvenile court's authority under section 213.5 to issue a restraining order protecting the "child or any other child in the household" applies whenever a dependency petition has been filed. We accordingly reject mother's argument that the restraining order in this case cannot reach Lilianna (who is the "child") or Lilianna's cousin (who is "[an]other child in the household"), but agree with her that section 213.5 does not authorize the issuance of an order protecting the maternal grandmother. We therefore affirm in part and reverse in part.

## FACTS AND PROCEDURAL BACKGROUND

### I. The Family

Mother gave birth to Lilianna in August 2018. At the time of her birth, Lilianna had methamphetamine and amphetamines in her bloodstream, and thereafter suffered withdrawal symptoms.[2]

### II. Prior Juvenile Dependency Case

In October 2018, the juvenile court exerted dependency jurisdiction over Lilianna on the basis of (1) the drugs in Lilianna's body at the time of her birth, and (2) mother's history of illicit drug use. The court initially removed Lilianna from mother, but later returned her to mother's custody and, in October 2019, terminated jurisdiction over Lilianna.

### III. Facts Underlying the Current Dependency Case

By January 2022, Lilianna was three years old. Mother regularly screamed at Lilianna and threatened to hit her, with her voice so loud that mother's neighbors could hear the commotion through the walls of their apartment complex. On several occasions, mother made good on her threats and actually

---

2      Lilianna's alleged father is Jerome T., but he has not been involved in the case.

*did* strike Lilianna with her hand. In late March 2022, mother took Lilianna to an alleyway; while under the influence or mentally ill, mother yelled that she needed a break, that people "want to lock her up and kill her," and that she needed someone to take Lilianna. On prior occasions, mother had yelled at cars and acted in a manner that evinced some mental instability. A concerned neighbor took Lilianna into her custody, and called the authorities. Lilianna is scared of mother.

## IV. Current Dependency Case

### A. *The petition*

On March 29, 2022, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Lilianna due to (1) mother's "history of substance abuse" that "renders [her] unable to provide regular care and supervision" of Lilianna, as evidenced by the prior juvenile dependency case; and (2) mother's "fail[ure] to make an appropriate plan for [Lilianna's] ongoing care and supervision," as evidenced by mother's attempt to find anyone else to take custody of Lilianna.[3] The Department further alleged that mother's conduct placed Lilianna at substantial risk of serious physical harm, thereby warranting the exercise of jurisdiction under subdivision (b) of section 300.

### B. *Mother's threats and interim temporary restraining order*

Soon after the Department filed its petition, the juvenile court detained Lilianna from mother and placed her with

---

[3] The Department also alleged that mother maintained a "filthy and unsanitary home," but the juvenile court dismissed that allegation.

4

mother's sister (maternal aunt), who lived with her husband (maternal uncle) and their toddler child (maternal cousin).

On May 10, 2022, mother called maternal aunt and left a voicemail. In the voicemail, mother said, "Here's the deal. I am going to fucking murder you because you let [Lilianna] go around" Lilianna's grandmother (maternal grandmother), whom mother believed—without any foundation—was a "child molester." In the same voicemail, mother accused maternal aunt of being in a cult and being mentally ill. The same day, mother also called and left a voicemail for maternal grandmother, in which mother "rambled on" while accusing maternal grandmother of being a child molester and being a cult member. Mother additionally made three attempts to call maternal uncle that day.

On May 19, 2022, the juvenile court issued a temporary restraining order (TRO) prohibiting mother from harassing and contacting Lilianna, maternal aunt, maternal uncle, maternal cousin, and maternal grandmother, and ordered her to stay 100 yards away from them—except for scheduled visitation with Lilianna. The court granted multiple extensions, keeping the TRO in effect until the jurisdictional and dispositional hearing.

While the TRO was in place, mother did not make any more threatening communications.

C.   *Jurisdictional and dispositional hearing*

On August 10, 2022, the juvenile court exerted dependency jurisdiction over Lilianna on the basis of mother's substance abuse and her failure to make an appropriate plan. The court removed Lilianna from mother's custody, and ordered the Department to provide mother with reunification services. The court ordered that Lilianna be placed with maternal aunt,

maternal uncle, and maternal cousin.  Simultaneously, the court issued a three-year permanent restraining order enjoining mother from harassing or contacting—and also ordering her to stay away from—Lilianna, maternal aunt, maternal uncle, maternal cousin, and maternal grandmother (except for authorized visits with Lilianna).  Mother did not object to the inclusion of maternal cousin or maternal grandmother in the restraining order.

**D.** *Appeal*

Mother filed a timely notice of appeal challenging the juvenile court's "Jurisdiction and Disposition Orders of Suitable Placement . . . ."  The notice did not list the restraining order.

## DISCUSSION

In this appeal, mother does not contest the juvenile court's exercise of dependency jurisdiction over Lilianna or its dispositional order removing Lilianna from her custody.  Instead, she argues that the juvenile court erred by issuing a restraining order that (1) protects Lilianna, because there is insufficient evidence to support any order against mother; and (2) protects maternal cousin and maternal grandmother, because the statute authorizing restraining orders—section 213.5—does not permit a court to issue a restraining order protecting persons with such an attenuated relationship to the dependent child.  The Department objects that we cannot decide these issues because mother's notice of appeal does not list the restraining order and because mother did not object to the inclusion of these individuals at the hearing; we construe the notice of appeal to encompass mother's challenge, and exercise our discretion to overlook any forfeiture of the issue by mother.

6

Under section 213.5, and as pertinent here, a juvenile court has the authority to issue a restraining order lasting up to three years that protects a dependent "child," "any other child in the household," as well as "any parent, legal guardian, or current caretaker of the child" from harassment by a parent.  (§ 213.5, subds. (a) & (d); Cal. Rules of Court, rule 5.630(a).)  A court may issue such an order if it finds that the person to be restrained has "'disturbed the peace'"—that is, engaged in conduct that destroys a person's mental or emotional calm—of the person to be protected.  (*In re Bruno M.* (2018) 28 Cal.App.5th 990, 997 (*Bruno M.*).)  Neither "evidence" of prior physical abuse nor "a reasonable apprehension of future physical abuse" is required.  (*Ibid.*; *In re B.S.* (2009) 172 Cal.App.4th 183, 193-194.)

## I.    Lilianna as a Protected Person

Mother argues that there is insufficient evidence to support issuing a restraining order that protects Lilianna.

### A.    *Construction of section 213.5*

Before addressing mother's substantial evidence challenge, we must confront a precursor question of statutory construction: Does section 213.5 authorize a juvenile court to issue a restraining order that protects the "child" at issue in the dependency proceeding?  We independently analyze statutes. (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857.)

In pertinent part, subdivision (a) of section 213.5 provides:

> "After a petition has been filed *pursuant to Section 311* to declare a child a dependent child of the juvenile court, and until the time that the petition is dismissed or dependency is terminated, . . . the juvenile court has exclusive jurisdiction to issue ex parte orders (1) enjoining a person from molesting,

7

> attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, . . . destroying the personal property, contacting, . . . coming within a specific distance of, or disturbing the peace of *the child or any other child in the household*." (§ 213.5, subd. (a), italics added.)

Subdivision (d) then empowers a juvenile court to issue a restraining order lasting up to three years on any ground in subdivision (a) as long as the enjoined party receives notice and a hearing.  (§ 213.5, subd. (d).)

Here is the problem:  Section 311 refers to petitions filed by a parent's "probation officer."  (§ 311.)  Thus, the text of section 213.5—if read literally—appears to limit a juvenile court's power to issue both temporary and permanent restraining orders that protect the child at issue in the dependent case to situations in which the petition was filed by a probation officer, *but not in the vast majority of cases where the petition is filed by a social worker*.

We reject this literal reading of section 213.5, and we do so for three reasons.

First and foremost, it leads to what we view as an absurd result.  If the above-quoted text is read literally, a juvenile court would lack the power—in the vast majority of dependency cases where petitions are filed by social workers pursuant to section 325—to issue a restraining order protecting the very child from the parent whom the court has just determined has inflicted physical harm, emotional abuse, or sexual abuse upon the child or has otherwise placed the child at substantial risk of such harm or abuse.  (See generally § 300.)  A literal reading would accordingly leave the vast majority of children *most* in need of

8

protection with *less* protection.  This result is diametrically contrary to the core purpose of the dependency statutes—namely, to provide the "maximum safety and protection" for abused and neglected children.  (§ 300.2, subd. (a).)  Because the """"language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend"""" (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290), we are disinclined to read section 213.5's reference to section 311 literally.

Second, our review of the legislative history of section 213.5 indicates that the statute's reference to "[s]ection 311"—and hence, the possible limitation of a juvenile court's power to issue restraining orders to dependency cases initiated by a parent's probation officer—was a drafting error.  Prior to 1996, section 213.5 authorized a juvenile court to issue restraining orders "[d]uring the pendency of any proceeding to declare a minor child a dependent child of the juvenile court."  (Stats. 1989, ch. 1409, § 2.)  This language did not make a juvenile court's power to issue restraining orders contingent on *who* filed the petition invoking the court's jurisdiction.  In 1996, an Assembly Member introduced a bill to amend section 213.5 to state that a juvenile court could issue a restraining order "[a]fter a petition has been filed *pursuant to Section 300* to declare a minor child a dependent."  (Italics added.)  (Assem. Bill. No. 2154 (1995-1996 Reg. Sess.) as introduced Feb. 6, 1996.)  After the Assembly passed this bill, the Senate expressed concern over the bill's reference to section 300 because that statute enumerates the *substantive grounds* for filing a petition but "does not [itself] authorize the filing of a petition."  (Sen. Com. on Judiciary,

9

Analysis of Assem. Bill No. 2154 (1995-1996 Reg Sess.) as amended June 4, 1996.) To cure what it perceived as this technical inaccuracy, the Senate replaced "[s]ection 300" with "[s]ection 311," which, as noted above, authorizes *probation officers* to file dependency petitions. The Senate overlooked that section 325 specifically authorizes *"social worker[s]"* to file petitions as well. (§ 325, italics added.) Because neither the Assembly nor the Senate ever expressed or even hinted at any intent to limit section 213.5's reach to petitions filed by probation officers, the insertion of "[s]ection 311" appears to be a drafting error that we may disregard. (See *Arnall v. Superior Court* (2010) 190 Cal.App.4th 360, 368.)

Third and lastly, the dependency statutes as a whole reinforce our conclusion that section 213.5 empowers juvenile courts to issue restraining orders to protect the dependent child even when it is a social worker who files the initial petition. To begin, section 213.5 supports this conclusion. The language we have been analyzing is the *first* sentence in subdivision (a) of section 213.5. The *second* sentence empowers a juvenile court to issue a restraining order to protect "any parent, legal guardian, or current caretaker of the child," but contains no reference to section 311 and thus does not limit the court's power to cases in which the petition was filed by a probation officer. (§ 213.5, subd. (a).) We see no logical reason for granting a juvenile court *more* authority to protect a parent, legal guardian, or current caretaker than the court has to protect the dependent child who is the subject of the case. What is more, our Legislature seemed to make the same drafting error when amending section 304 in 1996. Section 304 provides that no other division of a superior court shall hear proceedings regarding a child in juvenile

10

dependency proceedings, but—like section 213.5—limits its reach to situations where "a petition has been filed pursuant to [s]ection 311." (§ 304.) Yet it makes no sense to bar parallel proceedings regarding a child when a parent's probation officer files a dependency petition, but to allow such parallel proceedings in the vast majority of cases when the petition is filed by a social worker. The absurdity of this result hammers home that, in the broader context of the dependency statutes, the Legislature in both section 213.5 and in section 304 *really* meant to refer to "section 325" or "sections 325 and 311"—not solely "[s]ection 311."

To be sure, this drafting error is now 27 years old. In the intervening 27 years, countless judicial decisions have upheld restraining orders protecting the dependent child in cases where the social worker filed the petition, implicitly adopting the analysis we set forth here. We publish to provide a usable citation to justify this longstanding and consistent reading of section 213.5.

### B. *Substantial evidence analysis*

Because, as we have concluded, section 213.5 empowers the juvenile court to issue a restraining order to protect Lilianna, the question becomes whether the evidence in this case supports such an order. In resolving this question, we review for substantial evidence or an abuse of discretion; either way, the question is the same—namely, does the record, when viewed in the light most favorable to the ruling, support a finding that mother engaged in conduct that disturbed Lilianna's peace? (*Bruno M.*, *supra*, 28 Cal.App.5th at pp. 996-997; *In re L.W.* (2020) 44 Cal.App.5th 44, 51; *In re N.L.* (2015) 236 Cal.App.4th 1460, 1465-1466 (*N.L.*).)

Lilianna is properly listed as a protected party because substantial evidence supports the juvenile court's implicit finding

11

that mother previously disturbed Lilianna's peace. Mother regularly yelled at Lilianna and sometimes struck her, which Lilianna admitted caused her to fear mother. This certainly destroyed Lilianna's mental or emotional calm.

Mother resists this conclusion with three arguments.

First, she argues that *In re C.Q.* (2013) 219 Cal.App.4th 355 and *N.L.*, *supra*, 236 Cal.App.4th 1460 dictate a result in her favor. They do not, as they are inapt. Neither case involves a situation in which the parent directed her actions *at the child*—as mother did here. (*C.Q.*, at pp. 364-365 [no basis to list children as protected persons when they were not present when father engaged in domestic violence against mother]; *N.L.*, at pp. 1467-1468 [no basis to list child as protected person when mother's drug use and practice of making false allegations that father committed sexual abuse did not indicate that mother had "engaged in any violent or dangerous conduct toward" the child].)

Second, mother urges that the "primary basis" for the restraining order was the threatening voicemails she left in May 2022, and which did not threaten Lilianna. This is of no consequence because, as noted above, the record elsewhere supports the finding that mother on other occasions disturbed Lilianna's peace. The fact that mother did not *also* threaten to kill her daughter on the voicemail does not somehow negate all other evidence that supports naming Lilianna as a protected person.

Third and lastly, mother urges that she did not make any further threats after her May 2022 calls (and, implicitly, did not yell at or strike Lilianna since May 2022). This is also of no consequence because the TRO explicitly prohibiting that behavior had been in place since those threats were made, and mother's

contact with Lilianna has been limited to monitored visits where the opportunity to yell at or strike Lilianna is greatly reduced. Under these circumstances, the absence of *further* harm does not mean that Lilianna is not in continued danger of abuse from mother should no restraining order at all be in place.

## II.     Maternal Cousin and Maternal Grandmother as Protected Persons

Mother also argues that the juvenile court erred in listing maternal cousin and maternal grandmother as protected persons because they fall outside the ambit of section 213.5.

Mother is incorrect as to maternal cousin. That is because, as noted above, the statute reaches the child and "other children in the household." Because maternal cousin is the child of maternal aunt and maternal uncle, and because maternal aunt is the current caregiver of Lilianna, maternal cousin was a child in the household with Lilianna at the time the restraining order issued.

But mother is correct as to maternal grandmother. Section 213.5 specifically lists the universe of persons in whose favor a restraining order may issue, and that list does not include a maternal grandmother unless that person happens to be the "legal guardian" or "current caretaker" of the child—neither of which reaches maternal grandmother *in this case*. This is not to say that maternal grandmother might not be entitled to a restraining order in her favor due to mother's threats under some other statute aside from section 213.5.

13

## DISPOSITION

The juvenile court is ordered to modify the restraining order to exclude maternal grandmother as a protected person.  In all other respects, the juvenile court's jurisdictional and dispositional orders are affirmed.

**<u>CERTIFIED FOR PARTIAL PUBLICATION</u>**.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

14