Filed 6/28/24 Certified for Publication 7/26/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.P. et al., | B327857 |
| Persons Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. 22CCJP05017) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. Lidia P., Defendant and Appellant; Luis M., Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Judge Pro Tempore. Reversed with directions.

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant Lidia P.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Respondent Luis M.

_____

Appellant Lidia P. (Mother) asserts the juvenile court erred by denying her request for a restraining order protecting her from respondent Luis M. (Father). The juvenile court found that Father recently committed multiple acts of domestic violence against Mother and one of her children. The court nevertheless declined to issue a restraining order, finding it unnecessary because Mother and Father no longer resided together. The court instead orally ordered both parents to stay away from one another.

The parties no longer residing together was not a proper basis on which to deny Mother the protection afforded by a restraining order. Nor was the oral stay-away order a proper substitute. We therefore reverse and remand for a new hearing on Mother's restraining order request.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has two children: A.P. (born 2016) and D.P. (born 2018). Father is D.P.'s presumed father, and has requested presumed father status for A.P. as well. On December 27, 2022, the Los Angeles County Department of Children and Family

Services (DCFS) filed a Welfare and Institutions Code[1] section 300 petition alleging A.P. and D.P. were at substantial risk of harm because of domestic violence between Mother and Father (counts a-1, b-1), Mother's mental and emotional problems (count b-2), Father's severe epilepsy and his driving the children without proper safety restraints (count b-3), Father's marijuana use (count b-4), and Father's physical abuse of A.P. (counts b-5, j-1). With regard to domestic violence, count a-1 alleged that on December 10, 2022, Father forcibly grabbed Mother's head with his hands causing her pain, and that on December 18, 2022, he pushed Mother to the ground causing pain in her right leg. Count b-5 alleged that Father had twice hit A.P. in the head, once with a closed fist and once with an open hand.

Prior to the filing of the section 300 petition, on December 20, 2022, Father agreed with DCFS to a safety plan in which he would leave the family home. The next day, a social worker found Father still at the home. Both Mother and Father claimed he had not slept there the previous night and had stopped by to retrieve some belongings; both children said Father had slept in Mother's bedroom the previous evening. At some point soon after December 20, 2022, Father indisputably moved out of the residence.

On December 28, 2022, Mother filed a request for a restraining order pursuant to section 213.5, seeking protection for herself from Father based on his alleged domestic violence. The juvenile court granted a temporary restraining order (TRO) and set the matter for a future hearing on whether a permanent

---

[1] All unspecified statutory references are to the Welfare and Institutions Code.

restraining order would issue.[2]  Among other things, the TRO prohibited Father from contacting Mother or coming within 100 yards of Mother or her home.  After the TRO was issued, Father violated it by going to Mother's home on two or three occasions to attempt contacting her.  Call logs indicate Mother telephoned the police on January 7, 15, and 29, 2023 to report Father's violations of the TRO.  On January 30, 2023, a DCFS social worker explained to Father the possible consequences of continuing to violate the TRO.  Father promised to stay away from Mother, and there is no evidence in the appellate record that he contacted Mother after that discussion.

As permitted by section 213.5, subdivision (c)(5), the hearing on the permanent restraining order took place simultaneously with the jurisdiction/disposition hearing on February 22, 2023.  Mother testified that she remained in fear of Father.  At the hearing, the juvenile court sustained count b-1 related to domestic violence by Father upon Mother, count b-2 related to Mother's mental and emotional problems, and counts b-5 and j-1 related to Father's physical abuse of A.P.; the court struck the remaining counts.  The court removed the children from both parents.  Among other things, Father was ordered to participate in a domestic violence perpetrator's class, and Mother in a program for domestic violence victims.

---

[2] We use the term "permanent" to distinguish a restraining order issued after notice and hearing from a TRO issued ex parte.  (Compare § 213.5, subd. (a) [TRO] with § 213.5, subd. (d)(1) [permanent order].)  Such an order is not permanent in the sense that it remains in force indefinitely, as permanent orders cannot exceed three years in length.  (*Ibid.*)

The court declined to issue a permanent restraining order, and dissolved the TRO, finding that the parents living separately had accomplished the same result a restraining order would. The court instead orally ordered both parents "not to visit together. Father not to call Mother, not to go down to her house. Same thing with Mother. Stay away from the father."

## DISCUSSION

### A.     Standard of Review

We apply both the substantial evidence and abuse of discretion standards to determine whether a juvenile court properly denied a section 213.5 restraining order request. (*In re S.G.* (2021) 71 Cal.App.5th 654, 670.) When reviewing for substantial evidence, " ' "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citation.]" [Citation.]' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

"The substantial evidence standard of review takes on a unique formulation where . . . 'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals.' [Citation.] 'Where the issue on appeal turns on a failure of proof at trial, the

5

question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' [Citation.] Specifically, we ask 'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." [Citation.]' [Citation.]" (*In re S.G.*, *supra*, 71 Cal.App.5th at p. 671.)

"Review for abuse of discretion is . . . focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' [Citation.]" (*In re Caden C.* (2021) 11 Cal.5th 614, 641.) Whether a trial court applied the correct legal standard in exercising its discretion is a question of law that we review de novo. (*N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 601-602.)

## B. The Juvenile Court Erred in Denying Mother's Restraining Order Request

### 1. *Section 213.5*

"Under section 213.5, and as pertinent here, a juvenile court has the authority to issue a restraining order lasting up to three years that protects . . . 'any parent . . . of the [dependent] child' from harassment by a parent. (§ 213.5, subds. (a) & (d); see Cal. Rules of Court, rule 5.630(a).)" (*In re Lilianna C.* (2024) 99 Cal.App.5th 638, 643-644.) When a dependency matter is pending, the juvenile court has exclusive authority to issue such restraining orders; the parent of a dependent may not seek one from another division of the superior court. (§ 213.5, subd. (a).) Section 213.5 directs the juvenile court to issue such restraining

6

orders "in the manner provided by [s]ection 6300 of the Family Code." (§ 213.5, subd. (a).) Given the cross-reference in section 213.5 to Family Code section 6300, courts have analogized the issuance of a section 213.5 restraining order to the issuance of protective orders under the Domestic Violence Prevention Act (DVPA), Family Code section 6200 et seq. (*In re N.L.* (2015) 236 Cal.App.4th 1460, 1466; *In re B.S.* (2009) 172 Cal.App.4th 183, 194.)

Like the DVPA, a protective order issued pursuant to section 213.5 enjoins the restrained party among other things " 'from molesting, attacking, striking, . . . stalking, or battering' " any parent of the dependent child. (*In re B.S.*, *supra*, 172 Cal.App.4th at p. 193.) "Accordingly, evidence that the restrained person has previously molested, attacked, struck, . . . stalked, or battered" the parent to be protected is not necessary but "certainly sufficient" to support the issuance of a restraining order under section 213.5. (*Ibid*.) Section 213.5 does not require a reasonable apprehension of future physical abuse by the party to be protected for issuance of a restraining order. (*In re Lilianna C.*, *supra*, 99 Cal.App.5th at p. 644.)

If granted, a section 213.5 restraining order must be issued on approved Judicial Council forms and entered in the California Law Enforcement Telecommunications System or "CLETS." (§ 213.5, subds. (h), (j).) An order's entry into CLETS "permits it to be enforced by law enforcement officers." (*In re Marriage of Reichental* (2021) 73 Cal.App.5th 396, 405.) A "non-CLETS" order, such as the juvenile court's order here for the parties to stay away from one another, is not entered into CLETS and thus is typically not enforced by law enforcement. (*Ibid*.)

### 2. *Substantial Evidence Supports the Juvenile Court's Finding that Father Committed Domestic Violence*

Neither parent contests the court's exercise of dependency jurisdiction, which was based in part on findings that Father committed multiple acts of domestic violence. At the combined hearing on jurisdiction/disposition and Mother's restraining order request, the juvenile court found Father committed domestic violence against Mother on December 10 and 18, 2022. It further found Father had committed two acts of domestic violence against one of Mother's children. Father does not contest that he perpetrated domestic violence and admits the court did not deny Mother's restraining order request based on a failure of proof that such abuse occurred.

With regard to Mother's restraining order request, we are satisfied substantial evidence supports the court's domestic violence findings. Father admitted grabbing Mother by the neck on December 10, 2022, and pushing Mother on December 18, 2022, resulting in her falling down. Mother told police responding to the December 10, 2022 incident that Father was acting erratically, had grabbed her neck with both hands, and had held on for approximately two minutes before letting go. Although Mother told police Father did not attempt to strangle her while grabbing her neck, Mother told her sister that Father had in fact attempted to strangle her. Mother told DCFS that on December 18, 2022, Father had taken Mother's phone away and pushed her to the ground when she attempted to retrieve it. A.P. told DCFS that Father had previously hit A.P.'s head with a closed fist hard enough to fracture A.P.'s skull and send him to the hospital, and another time hit A.P.'s mouth with an open hand and knocked a tooth out.

8

Father also admitted going to Mother's home in violation of the TRO.  Under the DVPA, engaging in behavior that violates a TRO constitutes an additional act of abuse.  (Fam. Code, § 6203, subd. (a)(4); see also *N.T. v. H.T.*, *supra*, 34 Cal.App.5th at p. 602.)  We see no reason to reach a different result under section 213.5.  Section 213.5 permits a juvenile court to enjoin "contacting" as well as "coming within a specified distance of" a protected party, and the TRO contained these prohibitions. (§ 213.5, subd. (a).)  Father contacted Mother at her home in violation of the TRO more than once, requiring Mother to call police to enforce the TRO.  Father's counsel acknowledged at the February 22, 2023 hearing that Father knew he violated the TRO, and such knowing violations are neither de minimis nor technical but substantive acts of further abuse.  (*N.T. v. H.T.*, *supra*, 34 Cal.App.5th at p. 603.)

3. *The Juvenile Court Abused its Discretion in Denying the Requested Restraining Order Because the Parents No Longer Lived Together*

Conceding the court's findings regarding his domestic violence, Father instead argues the court did not abuse its discretion in declining to issue the requested restraining order despite those findings.  Father initially characterizes the juvenile court as having granted Mother's request in part by issuing a no-contact order under section 213.5 and denying it in all other respects.  That is not what occurred.  The court's oral ruling and its minute order make that clear the court denied all of Mother's requests pursuant to section 213.5; it did not grant some and deny others.  The court did not issue its stay-away order on a Judicial Council form, which would have set forth with more specificity what the order prohibited Father from doing, and the

9

court did not transmit the order for entry into CLETS so that police could enforce it—both of which section 213.5 would have required.  (§ 213.5, subds. (h), (j).)

Father next argues that even if the stay-away order was not issued pursuant to section 213.5, Mother suffered no prejudice or miscarriage of justice because the stay-away order combined with the parents no longer residing together provided Mother any necessary relief.  We disagree.  Physical separation is not a substitute for the protection provided by a restraining order.  Nor is a non-CLETS stay-away order.

A court may not deny a restraining order request under the DVPA on the basis that one parent no longer lives in the same residence as the other parent.  (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 119-120, citing Fam. Code, § 6301, subd. (b).)  The rationale for this rule is that given " 'the recognized seriousness of domestic abuse, domestic violence survivors must not be denied critical protection under the DVPA merely [because] they have succeeded in extracting themselves from the immediate risks posed by living with their abuser.' "  (*In re Marriage of F.M. & M.M.*, *supra*, at pp. 119-120.)  That rationale applies with equal force to a section 213.5 restraining order, particularly given that such orders are issued "in the manner provided by [s]ection 6300 of the Family Code, if related to domestic violence."  (§ 213.5, subd. (a).)  Given section 213.5's reference to Family Code section 6300 and the juvenile court's exclusive authority over restraining orders sought by a parent while dependency proceedings are on-going, a domestic violence survivor in Mother's position should not receive less protection than she would in a family law court simply because the parents no longer live together.

The "use of residential separation as a substitute for a [restraining order is further] inappropriate given that the parties still have to coparent," which means "further interactions between the two are unavoidable." (*In re Marriage of F.M. & M.M.*, *supra*, 65 Cal.App.5th at p. 120.) The facts here illustrate this point. Following the denial of the restraining order, the court made a home of Mother order in September 2023 and granted Father unmonitored visitation; the court later made home of parents orders with Father having primary custody and the parents exchanging the children for their respective custodial times.[3] The parents may no longer live together, but their parenting responsibilities necessitate that they continue to regularly meet and interact with one another.

The mutual stay-away order was a similarly flawed substitute for the protections afforded by a section 213.5 restraining order. That the juvenile court felt compelled to issue such a stay-away order "suggest[s] that the . . . court believed there was a need to admonish [Father] from the bench that he must continue to stay away and have no contact with [Mother]" because of concerns that future abuse might occur "but without giving [Mother] the legal protection of a restraining order." (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 562.) As noted above, a restraining order is entered into CLETS and is immediately enforceable by police. The stay-away order the court

_____

[3] We grant Mother's request for judicial notice of the court's March 28, 2024 minute order, and on our own motion augment the record to include the minute orders from the September 21, 2023 and January 19, 2024 hearings, all of which reflect the court's custody orders. (Cal. Rules of Court, rules 8.155(a)(1)(A), 8.252(a).)

11

made was non-CLETS; should a violation occur, it would not provide Mother legal protection though immediate enforcement by police but instead require a more extended after-the-fact court process affording significantly diminished protection.

### 4. *Remand for New Hearing*

Mother requests that we order the juvenile court on remand to issue a restraining order. Because the juvenile court used an incorrect legal standard, it did not make factual findings related to the issuance of a restraining order beyond its finding of past abuse. Courts have discretion to issue a domestic violence restraining order based only on past abuse, and that discretion should be exercised liberally in favor of protecting survivors. (See *Parris J. v Christopher U.* (2023) 96 Cal.App.5th 108, 116.) If all material evidence relevant to the court's exercise of discretion was undisputed, we could determine Mother's entitlement to a restraining order as a matter of law. But the court expressed concern with Mother's veracity as to any issues beyond the specific allegations it sustained because she was not taking her psychotropic medication and suffered from paranoid delusions. We further note that during the February 22, 2023 hearing, Mother made repeated disruptive outbursts, which the court stated were "symptomatic of some underlying disorder." As factual disputes remain beyond the finding of past abuse, and if the court issues a restraining order it must further decide the terms and length of that order, we remand the matter to the juvenile court for further proceedings.

**DISPOSITION**

We reverse the juvenile court's denial of Mother's restraining order request.  We remand the matter for a new hearing on Mother's request consistent with the views expressed in this opinion.


WEINGART, J.


We concur:


ROTHSCHILD, P. J.


BENDIX, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.P. et al., <br><br> Persons Coming Under the Juvenile Court Law. | B327857 <br><br> (Los Angeles County Super. Ct. No. 22CCJP05017) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> LIDIA P., <br><br>     Defendant and Appellant; <br><br> LUIS M., <br><br>     Defendant and Respondent. | ORDER CERTIFYING FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on June 28, 2024, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.

_____

WEINGART, J.          ROTHSCHILD, P. J.         BENDIX, J.