Filed 11/22/21  In re C.H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re C.H., a Person Coming Under the Juvenile Court Law. | C093798 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.H.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD240160) |

Appellant A.H., mother of the minor, appeals after the juvenile court denied her application for a restraining order.  (Welf. & Inst. Code, §§ 213.5, 395.)[1]  She contends the juvenile court erred in denying her application.  She also contends the juvenile court erred in finding the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; § 224.2) (ICWA)

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

does not apply because, she argues, the record is inadequate to demonstrate compliance with the ICWA.  We find no merit in either contention and affirm.

## I.  BACKGROUND

On October 2, 2019, Sacramento County Department of Child, Family, and Adult Services (Department) filed a section 300 petition on behalf of the newborn minor based on mother's ongoing substance abuse problem.  Mother refused to disclose whether she had Indian ancestry, but the social worker reported that prior records indicated mother did not have any known Indian ancestry.  Father's whereabouts were initially unknown so he did not appear at the detention hearing.  The juvenile court ordered the minor detained and found no evidence parents had Indian ancestry.  It also entered a no contact order between mother and father.

Neither parent was personally present at the combined jurisdiction/disposition hearing.  The juvenile court sustained the petition, adjudged the minor a dependent child of the court, removed her from parental custody, and ordered reunification services be provided to mother.

Father came forward and was appointed counsel in December 2019.  Thereafter, he filed an ICWA-020 form (Parental Notification of Indian Status) stating he was a member of the "Isleta" tribe.  He also admitted to substance abuse and domestic violence and was provided reunification services.

The paternal grandmother reported father's paternal great-grandmother was part of the Navajo and Pueblo of Isleta tribes.  She further reported a person must have at least a quarter of tribal blood to register with the tribe.  Although father had not reported he was of Navajo descent, she believed he may be eligible, but the minor was not likely to qualify.  She provided the names of relatives.  The paternal aunt reported that neither father nor grandfather were registered with the Navajo tribe.  Father's paternal grandmother (minor's paternal great-grandmother) was born on a reservation, but she did not know which one.  She further reported that the minor's paternal grandfather was half

2

Native American (one-fourth Pueblo of Isleta and one-fourth Navajo), which made father one-eighth of each tribe and the minor one-sixteenth of each tribe. She believed the Pueblo of Isleta tribe of New Mexico required a person to be half Pueblo of Isleta to register, and neither father nor the minor met that requirement.

In June 2020, the Department reported that the whereabouts of parents were unknown. Mother had reported father had been living in her home at least through February 2020, and they had continued to engage in domestic violence, but father had left the home and was reportedly homeless. Parents, however, appeared at the September review hearing. The matter was continued to January 22, 2021, with pretrial in November 2020.

On October 15, 2020, mother filed a request for a restraining order against father. She alleged father "ha[d] been continually abusive and the mother [was] in fear of [father]." The court deleted the minor and minor's half siblings from the request, as they were not in mother's custody, granted an emergency temporary restraining order, and set a hearing on the request for a restraining order to coincide with the pretrial hearing.

In November 2020, father was reported to be living "somewhere in Southern California." He did not appear at the November pretrial/restraining order hearing. The hearing was continued for further efforts to locate and serve father. Mother's request for a restraining order was thereafter withdrawn due to lack of service on father and subsequently refiled on January 7, 2021, with the same allegations. Father appeared in court and filed a change of address with the court on January 13, 2021. He had checked himself into a residential rehabilitation/treatment facility.

On March 3, 2021, the juvenile court held the ICWA compliance hearing. The court had received several ICWA compliance reports from the Department. The Department's reports and ICWA addendums state that contact was made with the Pueblo of Isleta on October 6, 2020, via telephone, on October 7, 2020, via certified letter, and on October 23, 2020, via certified letter. Contact was made with the Navajo Nation on

3

May 14, 2020, via certified letter (with additional attempts via telephone and email), on October 7 and 23, 2020, via certified letters, January 8, 2021, via email, and on January 21, 2021, via certified letter. In November 2020, the Department received a letter from Pueblo of Isleta stating that the minor was not eligible for tribal membership. It did not receive a formal response from the Navajo Nation. County Counsel represented that "[t]he Department has followed up with all of the tribes that were mentioned that the child might be a member of and contacted all of those tribes. There either have been no response or response that the child is not eligible for membership." Mother's counsel then indicated she had "no objection to the Court making a finding under the ICWA that the child does not fall within that code section." The juvenile court found no reason to know the minor is an Indian child and that the ICWA does not apply.

After several continuances, the restraining order hearing took place on March 17, 2021. Father objected to the restraining order request, stating the order was unnecessary. The juvenile court denied the request for a restraining order and, instead, entered a peaceful contact order.

Additional facts are set forth in our discussion of the issues.

## II. DISCUSSION

A. *Denial of Restraining Order*

Mother contends the juvenile court misapplied the law in denying her request for a restraining order by impliedly requiring she prove father was currently harassing her and that she met her burden of proof justifying the issuance of the restraining order. We find no reversable error.

Section 213.5, subdivision (a) permits a juvenile court to issue an order "enjoining any person from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying the personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a

4

specified distance of, or disturbing the peace of the child [or parent].'" "Issuance of a restraining order under section 213.5 does not require 'evidence that the restrained person has previously molested, attacked, struck, sexually assaulted, stalked, or battered the child.' (*In re B.S.* (2009) 172 Cal.App.4th 183, 193.) Nor does it require evidence of a reasonable apprehension of future abuse. (*Ibid.*)" (*In re C.Q.* (2013) 219 Cal.App.4th 355, 363.) "Section 213.5 is analogous 'to Family Code section 6340, which permits the issuance of a protective order under the Domestic Violence Prevention Act [(Fam. Code, § 6200 et seq.)] . . . if "failure to make [the order] may jeopardize the safety of the petitioner." ' " (*In re N.L.* (2015) 236 Cal.App.4th 1460, 1466.)

We review the juvenile court's factual conclusions for substantial evidence and review its decision, on those facts, whether to impose the restraining order for abuse of discretion. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1512; see also *In re Carlos H.* (2016) 5 Cal.App.5th 861, 866; *In re C.Q., supra*, 219 Cal.App.4th at p. 364.)

In support of her application for the restraining order, mother had averred that, during their relationship, father had continually hit her and destroyed her property, including her vehicle. Father had "recently" thrown a metal car part at the hood of her car, and she submitted a photo of the car showing a dent in the hood. She stated she had to lock herself in the car so father would not hit her, and father had ripped off the door handle in response. She did not specify whether that incident occurred on the same day nor submit a photo in support of this allegation.

Mother also averred that father had filled the interior of her car with gas and wanted to set her on fire on June 20, 2020. When she ran, father chased her with the gas can. On that same date, father had broken something in, and ruined, her ignition. Mother also averred father had hit her over the head with a plastic water bottle on June 22, 2020.

5

Additionally, mother submitted two text messages she averred established father was "harassing and assaulting [her] verbally from 7/28/20 and 8/19/20."[2] The first text message, dated July 28 (year not delineated on message) read: "Glad to see you and jake are having a great time together you fucking whore. I knew you were up to something. So bye bye to your fuckfest in tahoe. Im gone for good now well kinda. . . You'll see[.]" The second text message, dated August 19 (year not delineated on message), read: "Aww. If you only knew. When im not with you. I don't feel the need to take a toxic amount of meth. Your fighting for nothing. I love the fact that im clean and happy. Best part about it is...you cant ruin it. The way you still try to put that garbage on me is very unbecoming. Hope your happy. Sorry i couldnt do it for you. But i truely hope your happy with how it all worked out. . . . Bye you. Stop sending text like that by the way."

At the hearing on the application for a restraining order, father's counsel stated father reported he had not had, nor tried to make, contact with mother for over a year and a half, and was currently in an inpatient treatment program. He had been working on improving himself and had no intention of contacting mother. Father did not believe a restraining order was necessary and was requesting that, instead of a restraining order, the court issue an order for peaceful contact.

In response to the juvenile court's inquiry regarding the need to issue a restraining order "now," when the last contact mother alleges was in July 2020, mother's counsel stated that father's prior actions during the time he was abusing substances had been very significant and, should he relapse, he could again pose a danger to mother. The juvenile court stated it did not think a restraining order was "necessary at this point in time" and it did not think the legal requirements for a restraining order had been met. It declined to

---

[2] These exhibits, as well as the photo of the hood of her car, were submitted in connection with the mother's first application for restraining order and not attached to the second application.

issue a restraining order and, instead, issued a peaceable contact order. The juvenile court further invited mother's counsel to refile if other circumstances arose, or if there was anything else that needed to be brought to the court's attention.

Mother appears to contend the juvenile court misapplied the law because " '[t]he length of time since the most recent act of abuse is not, by itself, determinative. The court shall consider the totality of the circumstances in determining whether to grant or deny a petition for relief.' (*J.H. v. G.H.* (2021) 63 Cal.App.5th 633, 640-641, citing Fam. Code § 6301, subd. (c).)"

While issuance of a restraining order does not require a person currently is, or previously has molested, attacked, struck, sexually assaulted, stalked, or battered the child or parent, nor require evidence of a reasonable apprehension of future abuse, the mother was required to show, at the very least, that the issuance of a restraining order is warranted under the circumstances. There must be some evidence that the child's safety might be in jeopardy in the absence of the restraining order. (*In re C.Q., supra*, 219 Cal.App.4th at pp. 364-366.) "Issuance of the restraining order [is] not proper unless failure to issue the order might jeopardize the safety of the children." (*Id.* at p. 365; *In re N.L.* (2015) 236 Cal.App.4th 1460, 1467.)

Here, the juvenile court could reasonably conclude under the circumstances presented that any need for a restraining order was speculative and would be dependent upon a change in the current circumstances. Mother's counsel acknowledged that father had not recently attempted to contact mother and that the risk he may resume harassing contact was primarily based on possibility of a future relapse. Accordingly, the juvenile court could conclude, as it did, that mother had failed to show that the issuance of a restraining order at the then-present time and circumstances was warranted, or that the failure to issue such an order would place mother in jeopardy. We find no error.

7

*B.     ICWA Compliance*

By the time these proceedings commenced in October 2019, California had passed Assembly Bill 3176 (2017-2018 Reg. Sess.), which amended the statutes implementing the ICWA, including portions related to inquiry and notice. As amended, section 224.2, subdivision (e) now provides: "If the court, social worker, or probation officer has reason to *believe* that an Indian child is involved in a proceeding, the court, social worker, or probation officer shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (Italics added.) "Further inquiry includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3[;[3]] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility[;] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.). Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2).)

---

[3] Section 224.3, subdivision (a)(5) includes the name, birth date, and birthplace of the Indian child, if known; the name of the Indian tribe; and the names and other identifying information of the Indian child's biological parents, grandparents, and great-grandparents, if known.

Formal notice is required only when the further inquiry results in a reason to *know* the child is an Indian child. (See § 224.2, subd. (d) [defining circumstances that establish a "reason to know" a child is an Indian child]; § 224.3 [ICWA notice is required if there is a "reason to know" a child is an Indian child as defined under § 224.2, subd. (d)]; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

The juvenile court found the Department had complied with the ICWA requirements, there was no reason to know the minor is an Indian child, and the ICWA did not apply. Mother does not contend the Department failed to make necessary inquiries from the family members to gather the relevant information required in paragraph (5) of subdivision (a) of section 224.3, as required by section 224.2, subd. (e)(2)(A). Nor does mother contend the Department did not contact the relevant tribes to share information identified by the tribe as necessary for the tribe to make a membership or eligibility determination. Indeed, the Department filed several reports with the court detailing its efforts and actions in this regard. Instead, *citing to the former ICWA provisions and interpretative caselaw*, she contends reversal is required because the Department was required to file documentation, such as postal receipts, with the juvenile court establishing the efforts it undertook. This contention is without merit.

Section 224.2, as amended, does not identify a particular manner by which the Department must inform the juvenile court of its inquiry efforts when there is only "reason to believe" a child may be an Indian child. (*In re M.W.* (2020) 49 Cal.App.5th 1034, 1046.) It does not require the Department file documentation with the juvenile court establishing its efforts. The Department may demonstrate its efforts or due diligence, as it did here, via reports, declaration, or testimony. (*Ibid.*) Thus, we reject mother's claim of error and conclude the reports filed by the Department are sufficient to support the juvenile court's finding that the ICWA does not apply.

## III.  DISPOSITION

The orders of the juvenile court are affirmed.

/S/

RENNER, J.

We concur:

/S/

BLEASE, Acting P. J.

/S/

ROBIE, J.