Filed 3/5/26  In re M.C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | B344385, B345369 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent;<br><br>ANABEL G.,<br><br>Respondent,<br><br>v.<br><br>GUSTAVO C.R.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct.  No. 24CCJP03623) |

APPEAL from orders of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Lori Siegel, under appointment by the Court of Appeal, for Respondent.

No appearance for Plaintiff and Respondent.

\* \* \* \* \* \*

Gustavo C.R. appeals from restraining and custody orders of the juvenile court regarding minor M.C.  First, father disputes the lack of any exception for court-ordered visitation in the restraining order.  Second, father contends that the custody order fails to contain reasoning for not allowing visitation, which would purportedly prevent a subsequent family court from determining whether modification of the order to add visitation is warranted.  Finding no reversible error, we affirm the orders of the juvenile court.

**COMBINED FACTUAL AND PROCEDURAL HISTORY**
**Investigation**

This appeal concerns minor M.C., who was born in June 2015.  M.C.'s mother is respondent Anabel G. (mother), and M.C.'s father is defendant and appellant Gustavo C.R. (father).  Mother and father were married at one time but separated seven years after M.C. was born.  At all relevant times, M.C. lived with mother and his maternal half-sisters K.G. and Km.G.  (K.G. and Km.G. have a different biological father than M.C., so references to "father" here refer to defendant and appellant, their stepfather.)  Father lived in a different residence.

In October 2024, the Los Angeles County Department of Children and Family Services (DCFS) received a referral arising

from concerns that father picked up M.C. from school. A social worker subsequently interviewed the parties.

M.C. told the social worker that father "touches [M.C.'s] private spot," which M.C. clarified to mean his penis. After M.C. took a shower, father would "wiggle" M.C.'s penis. M.C. also stated that father used to "pinch [his] butt" and "[try] to kiss [him] on the lips." M.C. demanded father to stop, but father "does it anyway."

According to M.C., father threatens him by saying M.C. would live with father and never see his mom. As M.C. recounted father's threats, he reportedly became anxious and shook his leg. In August 2024, father went to mother's residence with the police to see M.C. M.C. told the police he did not want to visit with father overnight because he "does bad things, threatens me and says bad words . . . to me and makes me feel bad and not comfortable . . . ." The police left M.C. with mother.

Father also threatened to hit M.C. with a belt, using the belt to make slapping sounds. When M.C. was five years old, father told him to shower, but M.C. forgot. Father hit him on the right shoulder with the belt, leaving a "red stain." Mother argued with father for hitting him. M.C. reported that mother talks to him if he misbehaves. M.C. feels safe with mother, but not with father.

Mother confirmed that beginning in February 2024, M.C. refused to have overnight visits with father. Despite inquiry from mother, M.C. refused to explain the reason. When father went to mother's residence with the police to take M.C., father grabbed M.C. to give him a hug. M.C. looked at mother and extended his arm for her help.

Just prior to the referral, mother took M.C. to visit a family friend.  M.C. disclosed to the family friend that father would kiss him on the lips, pinch his buttocks, touch his penis, and hit him with a belt.  Mother later recorded a conversation with M.C., during which M.C. repeated what father did to him.  M.C. said that father forces M.C. to stay in the bedroom with him.  M.C. told mother that father threatened to take him from mother.  M.C. maintained, "Never, never in my life, do I want to go with him."

Father also sexually abused K.G.  She reported that the abuse started when she was eight years old and continued until she was 14 years old.  Father touched K.G. over and under clothing.  When K.G. was sleeping, father digitally penetrated her vagina.  On one occasion, K.G. woke up with her underwear off and father naked with his penis on top of her vagina.  Mother worked nights and was unaware of the abuse.  K.G. eventually resisted the abuse and ultimately told mother she did not want father in the home.  Mother asked father to leave the same night.  In November 2024, K.G. obtained a five-year restraining order against father, which prohibits father from harassing, assaulting, or contacting K.G.

Mother's other daughter, Km.G., did not recall any sexual abuse from father.  However, after leaving the shower on one occasion, father spun around in a towel and exposed himself to her.

In November 2024, the three children participated in a forensic interview with the Harbor-UCLA K.I.D.S. Hub.  The children recounted father's physical and sexual abuse.  The accounts were generally consistent with their accounts in the DCFS investigation.

4

**Petition and detention**

In November 2024, DCFS filed a non-detained Welfare and Institutions Code section 300 petition[1] seeking jurisdiction of all three children under subdivisions (b), (d), and (j). DCFS alleged father's previous sexual abuse of K.G. and M.C. placed all three children at risk of physical harm and sexual abuse.[2]

In December 2024, at the initial hearing, the juvenile court noted a family law proceeding was pending between mother and father concerning M.C. The court also noted the existence of the restraining order protecting K.G. against father.

The juvenile court found a prima facie case that all three children were persons described under section 300. The court detained M.C. from father with no visitation based on a finding of substantial danger to the physical health of the child. M.C. was released to mother's custody.

**Jurisdiction/disposition hearing**

Prior to the adjudication hearing, mother filed a request for restraining order protecting her and her three children from father. The request was based on the physical and sexual abuse described in the DCFS investigation.

The adjudication hearing took place on February 5, 2025. During the hearing, M.C.'s counsel argued the DCFS petition should be sustained as pled. Father's counsel argued that the parents' divorce proceeding would be the more appropriate venue to adjudicate the request for restraining order. Father's counsel

---

[1]    All further undesignated statutory references are to the Welfare and Institutions Code.

[2]    DCFS is not a participant in this appeal, as it did not request the restraining and custody orders at issue.

also argued that no detriment would result from the closing of the dependency case because the restraining order for K.G. already provided mother and the children with some measure of protection.

The juvenile court granted a temporary restraining order and sustained the petition as pled, finding credible the children's rendition of father's conduct. The court declared the children subject to its jurisdiction as dependents of the court and granted mother sole custody of M.C. The court terminated jurisdiction but stayed termination pending receipt of a custody order and ruling on a permanent restraining order.

On March 19, 2025, the juvenile court held a hearing regarding the custody order and restraining order. Father's counsel sought denial of the restraining order based on a theory of res judicata because the family law court had denied two purportedly similar requests for restraining orders by mother. Father also requested visitation only if M.C. wishes to visit father. Father presented no argument regarding any provision in the restraining order. Nor did father ask the court for specific reasons why it would not order visitation for M.C.

The juvenile court determined res judicata did not apply, holding the family law hearing was materially different from the juvenile court hearing. The court stated that unlike the family law proceeding, the dependency proceeding had a sustained petition and findings concerning the best interests of M.C. The court also noted it issued a temporary restraining order on similar allegations and no objections based on res judicata were asserted at that time.

Using Judicial Council form JV-255, the juvenile court issued a three-year restraining order prohibiting father from

6

harassing, assaulting, or contacting M.C. Under the "Order to Not Abuse" provisions in the restraining order, the box indicating "If this box is checked, this case involves domestic violence . . ." was checked. Under the "No-Contact Order" provisions in the restraining order, the box stating "You may contact or visit with your children only during court-ordered contact or visits" as an exception to the general no-contact order was unchecked.

The juvenile court also entered a Judicial Council JV-200 custody order granting mother sole custody of M.C. and ordering father not to have contact with M.C. Jurisdiction over M.C. was terminated. The visitation provisions in the custody order were unchecked and not completed. In particular, the box next to "No visitation is ordered for the reasons stated . . ." was unchecked. The JV-200 form allowed for reasons for no visitation to be stated on an attached Judicial Council form JV-206 or on an Attachment 5c. However, no such forms or attachments were included with the order. Under "Other findings and orders," the order stated, "Mother to have sole legal custody and sole physical custody. FA to not have contact with [M.C.] Upon signing of this Juvenile Custody Order, counsel for parents are both relieved." No other findings or orders were indicated.

Father filed timely notices of appeal of the juvenile court's orders concerning M.C.[3]

---

[3] On February 19, 2025, father filed a notice of appeal in case B344385 challenging the February 5, 2025 removal of M.C. from father's custody. On April 4, 2025, father filed a notice of appeal in case B345369 challenging the February 5, 2025 and March 19, 2025 removal of M.C. from father's custody, as well as the permanent restraining order entered on March 19, 2025.

7

**DISCUSSION**

**I. Applicable law and standard of review regarding exit orders**

At the close of a dependency case the juvenile court may issue orders pursuant to section 362.4, commonly known as "exit orders." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 269.) For example, the court may enter a final custody order determining final custody of and visitation with a child. (§ 362.4, subd. (a).) The court may also enter protective or restraining orders under section 213.5. (*Nicholas H., supra,* at p. 269.) Generally, we review a juvenile court's exit orders for abuse of discretion. (*In re J.M.* (2023) 89 Cal.App.5th 95, 113 [custody and visitation orders]; *In re Carlos H.* (2016) 5 Cal.App.5th 861, 866 [issuance of restraining order].)

**II. Restraining order**

**A. *Applicable law and standard of review***

Section 213.5, subdivision (a) gives the juvenile court the authority to issue a restraining order "enjoining a person from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning . . . destroying the personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the child . . . ."

"In reviewing the restraining order, 'we view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile

Pursuant to father's request, we consolidated the two appeals and designated case B344385 as the lead case.

8

court's determination. If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed.'" (*In re C.Q.* (2013) 219 Cal.App.4th 355, 364.) Some courts have applied two standards of review on appeal from the issuance of a restraining order: "substantial evidence to support the facts and [abuse of] discretion to impose a restraining order." (*In re N.L.* (2015) 236 Cal.App.4th 1460, 1466.) "The practical differences between these two standards in this context are not significant." (*Ibid.*) Father does not dispute the sufficiency of the evidence that supported the sustaining of the section 300 petition. Accordingly, we review the restraining order for abuse of discretion.

### B. *Analysis*

Father argues the juvenile court abused its discretion in the restraining order by not permitting visitation as may be ordered by subsequent courts, including the family court. The court did not check the box in the JV-255 form indicating father may visit M.C. "during court-ordered contact or visits."

The record contains substantial evidence supporting the juvenile court's decision to issue a restraining order without an exception for court-ordered visitation. Both M.C. and K.G. disclosed that father sexually abused them. A restraining order against father protects K.G. for five years. Km.G. reported father exposed himself to her. When father brought the police to take M.C. from mother, M.C. refused to leave with father and sought mother's protection. M.C. consistently expressed feeling safe with mother and not father. M.C. has expressed no desire to visit father and explicitly said, "Never, never in my life, do I want to go with him."

9

The juvenile court is charged with making orders consistent with the best interests of the child.  (*In re Armando L.* (2016) 1 Cal.App.5th 606, 619.)  "[I]n making exit orders, the juvenile court must look at the best interests of the child."  (*In re John W.* (1996) 41 Cal.App.4th 961, 973.)  Based on the evidence of sexual abuse, physical abuse, and M.C.'s fear of father, the juvenile court reasonably determined that M.C.'s best interests required complete protection from contact with father, without exception for potential future court-ordered visits.  This determination was well within the court's discretion and is supported by substantial evidence.

Father argues the legislative history of the Family Code and the Welfare and Institutions Code demonstrate the Legislature intended for juvenile and family courts to work together to protect victims.  However, the absence of an exception for court-ordered visits in the restraining order does not prevent such coordination or preclude future modification.  California Rules of Court, rule 5.92(a)(3) expressly allows a restraining order in a closed juvenile case to be modified by a family court.  Should circumstances change such that contact with father would serve M.C.'s best interests—for example, if M.C.'s fear of father dissipates and M.C. wishes to have contact—father may seek modification of the restraining order from the family court.  The juvenile court did not abuse its discretion in fashioning a restraining order that reflects M.C.'s current need for protection while preserving the family court's authority to modify the order if warranted in the future.

Moreover, father forfeited this challenge by failing to object to the specific terms of the restraining order in the juvenile court.  It was in the juvenile court father sought denial of the

10

restraining order based on res judicata and requested visitation only if M.C. wished to visit.  However, father never asserted the restraining order should contain an exception for court-ordered contact or visits, even though that was possible.  "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 (*S.B.*).)

While we have discretion to excuse forfeiture in cases presenting important legal issues (*S.B., supra,* 32 Cal.4th at p. 1293), the issue father raises here is factual rather than legal—whether it is in M.C.'s best interest that father have no contact with him without exception.  For the reasons discussed above, the record amply supports the juvenile court's determination.  We decline to excuse father's forfeiture.  On both the merits and on grounds of forfeiture, father's challenge to the restraining order fails.

## III.  Custody order

### A.  *Applicable law*

"When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation.  [Citations.]  Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court."  (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122–1123.)  Section 362.4 authorizes the juvenile court to make such an order.  (*In re Anna T.* (2020) 55 Cal.App.5th 870, 871 (*Anna T.*).)

A custody order issued by the juvenile court pursuant to section 362.4 is a final judgment and cannot be modified in a family law proceeding unless the court finds there has been a

11

significant change of circumstances since the juvenile court order was issued and modification of the order would be in the child's best interests. (§ 302, subd. (d); *Anna T., supra,* 55 Cal.App.5th at pp. 871–872.)

California Rules of Court, rule 5.700(b) requires the use of Judicial Council form JV-200 (Custody Order—Juvenile—Final Judgment). The importance of using the mandatory form was explained in the August 18, 2015 report by the Judicial Council's Family and Juvenile Law Advisory Committee, which stated: "'The orders need to provide specific direction to the parents and other parties to facilitate compliance and reduce the potential for conflict . . . . [¶] Juvenile final custody orders also need to provide sufficient detail, and use language familiar to the family law bench and bar, to permit the family court to enforce them if a dispute does arise or to modify or terminate the orders if circumstances change significantly and modification would be in the best interest of the child.'" (*Anna T., supra*, 55 Cal.App.5th at p. 878.) The custody order "'must address the circumstances that led to the juvenile court's child custody and parenting time orders to enable a family court to determine whether circumstances have changed to a degree that justifies considering whether the requested modification is in the best interests of the child.'" (*Id.* at p. 879.) This must be done "'without disclosing juvenile case information that should remain confidential, because juvenile court child custody orders, including attachments, are not themselves confidential.'" (*Ibid.*)

In dependency proceedings where a child is removed from a custodial parent, section 361.2 governs placement with the noncustodial parent. Subdivision (a) provides: "[When] a court orders removal of a child pursuant to Section 361, the court shall

12

first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) The same detriment analysis informs custody and visitation determinations in exit orders.

### B. *Analysis*

Father asserts that the custody order does not adequately explain why no visitation was ordered. Father maintains the family law court will not be able to determine whether the circumstances that led to the custody order have substantially changed.

The juvenile court properly exercised its discretion in issuing a custody order granting mother sole legal and physical custody and prohibiting father from contact with M.C. The court's decision was based on substantial evidence and reflects M.C.'s best interests given the sustained findings of sexual and physical abuse by father.

The record establishes that father was a noncustodial parent, and at all relevant times, M.C. lived with mother and his maternal half-sisters K.G. and Km.G. Father lived in a different residence. When M.C. was detained from father's custody in November 2024 and placed with mother, the juvenile court was required under section 361.2, subdivision (a), to determine whether placement with father would be detrimental to M.C.'s safety and well-being.

13

The record contains substantial evidence supporting such a finding of detriment. M.C. disclosed that father sexually abused him by touching his penis and buttocks and physically abused him by hitting him with a belt. M.C. expressed fear of father and stated he never wanted to see him. Father also sexually abused M.C.'s half-sister K.G. over a period of six years, prompting a five-year restraining order protecting K.G. from father. In addition, father exposed himself to M.C.'s other half-sister, Km.G. M.C. consistently expressed feeling safe with mother but not with father. This evidence amply supports the court's implicit finding that placement with father would be detrimental, and further supports the custody order's provision prohibiting father from contact with M.C.

The custody order did not contain any explanation regarding why father was not allowed to visit M.C., either on the face of the order or in any attachments. However, the custody order referenced and attached the permanent restraining order, which indicates the case involves domestic violence. As an exit order under section 362.4, subdivision (a), the restraining order is to be sent to the family court. (§ 362.4, subd. (b).)

Father cites no authority suggesting the juvenile court's written indication that domestic violence is involved provides insufficient guidance for the family court. As M.C.'s full name is on the custody and restraining orders, which are not confidential, the juvenile court was required to balance M.C.'s privacy with its obligation to explain its order. Even though the restraining order expires in three years, the finding of domestic violence justifying the issuance of the restraining order remains a relevant circumstance for a decision whether to allow visitation. By indicating that M.C. was the victim of domestic violence, the

14

juvenile court has provided the family court sufficient information to determine whether circumstances have significantly changed.  The written order suggests that if, in the future, M.C. is no longer at risk of violence from father, father may seek modification of the custody order to allow visitation.

Moreover, the family law court will not be operating in a vacuum when considering any future modification request.  The custody and restraining orders were filed in the parents' pending family law case (Superior Court Case No. 24LBFL00458), which already contains extensive documentation of father's conduct, including mother's two prior requests for restraining orders filed in August and October 2024, both detailing father's sexual abuse of the children and physical violence.  While the family law court denied those requests as matters between the divorcing parents without the benefit of the evidentiary hearing and sustained findings made in the juvenile dependency proceeding, the family law court has substantial context regarding the circumstances that led to the juvenile court's "no contact" determination.  Should father seek modification of the custody order under section 302, subdivision (d), the family law court will be well-positioned to evaluate whether there has been a significant change in circumstances and whether modification would serve M.C.'s best interests.

*Anna T., supra*, 55 Cal.App.5th 870 is readily distinguishable.  In *Anna T.*, the juvenile court declined to issue an exit order, finding such an order unnecessary.  Instead, the court indicated it was "'reverting to the original family law order,'" with modifications stated only in the minute order.  (*Id.* at p. 874.)  The order terminating jurisdiction over the child restated the court's decision not to issue a juvenile court custody

order pursuant to section 362.4, stating: "'The Court reverts back to the original family law decision—no Juvenile Custody Order is required for this case.'" (*Id.* at p. 875.) The *Anna T.* court reversed, finding the juvenile court's failure to follow required procedures for issuing posttermination custody orders deprived its orders of continuing effect. (*Id.* at p. 879.) The appellate court emphasized that exit orders "must address the circumstances that led to the juvenile court's child custody and parenting time orders to enable a family court to determine whether circumstances have changed to a degree that justifies considering whether the requested modification is in the best interests of the child." (*Id.* at pp. 878–879.)

*Anna T.*'s holding was grounded in the juvenile court's failure to issue any exit order at all—the court simply attempted to "revert" to predependency family law orders rather than exercising its section 362.4 authority. By contrast, the juvenile court here properly followed mandatory procedures by issuing a formal custody order on the mandatory JV-200 form, as required by California Rules of Court, rule 5.700(b). The court also issued a three-year restraining order on Judicial Council form JV-255, which was attached to and referenced in the custody order. Both orders contain clear provisions prohibiting father from contact with M.C. The restraining order explicitly indicates the case involves domestic violence.

Unlike *Anna T.*, where no exit order existed to guide the family court, here the juvenile court created enforceable exit orders that became part of the family law case file upon termination of jurisdiction. (§ 362.4, subd. (b).) The orders, as well as mother's two prior restraining order requests filed in the family law court, provide the court with the essential information

16

needed: that M.C.'s safety requires protection from father based on sustained findings of sexual and physical abuse, and that any modification must account for the domestic violence that necessitated a three-year restraining order.  This satisfies *Anna T.*'s requirement that exit orders "address the circumstances" underlying the custody determination.  (*Anna T.*, *supra*, 55 Cal.App.5th at p. 879.)  The family law court can meaningfully evaluate whether a significant change in circumstances has occurred and whether any modification would serve M.C.'s best interests.

Father cites no authority suggesting the juvenile court's indication of domestic violence, combined with the attached restraining order and the existing family law case history, provides insufficient guidance.  The exit orders here stand in stark contrast to *Anna T.*'s absence of any section 362.4 order.  We thus find no abuse of discretion.

Father also forfeited this challenge by failing to request specific reasoning in the custody order.  At the March 19, 2025 hearing, father focused his argument on why the restraining order should not be granted and maintained that he should be allowed to visit if M.C. agreed.  Father did not challenge the custody order based on lack of reasoning for the "no visitation" provision or ask the court to provide specific reasons.  "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court."  (*S.B.*, *supra*, 32 Cal.4th at p. 1293.)  Because the issue father raises is factual—concerning the adequacy of the exit order's explanation—rather than a question of important legal principle, we decline to overlook the forfeiture.  (*Id*. at p. 1294.)

17

On both the merits and on forfeiture grounds, father's challenge to the custody order fails. The juvenile court's exit orders appropriately protected M.C. while preserving the family court's authority to modify the orders should circumstances significantly change in the future.

## DISPOSITION

The orders of February 5, 2025, and March 19, 2025, are affirmed.

CHAVEZ, J.

We concur:

LUI, P. J.                    GILBERT, J.*

---

*      Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.